HAROLD WARREN RACHIELL, peticionario y recurrente, *Ex parte*; PUEBLO DE PUERTO RICO, interventor y recurrido.

*Número:* R-64-190      *Resuelto:* 23 de abril de 1965

*Felipe González Vergara,* abogado del recurrente; *J. B. Fernández Badillo, Procurador General,* y *Elpidio Arcaya, Procurador General Auxiliar,* abogados del interventor.

Sala integrada por el Juez Presidente Interino Señor Pérez Pimentel y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

El recurrente Harold Warren Rachiell acudió ante el Tribunal Superior, Sala de Ponce, interesando la autorización de la adopción de Mark Roger Des Jarlais, hijo de la esposa del peticionario en un matrimonio anterior. Alegó que desde el día 5 de septiembre de 1952 el menor, quien cuenta más de 18 años de edad, ha vivido en su compañía, habiéndose desarrollado entre ambos una relación de padre e hijo

que aún perdura, y manifestó su deseo de educarlo y protegerlo. Luego del trámite de rigor—notificación al padre biológico por medio de edictos por ignorarse su paradero y traslado de la solicitud a la dependencia de Bienestar Público para la investigación correspondiente—se sometió una estipulación suscrita por el abogado del peticionario y el fiscal de distrito dirigida principalmente a esclarecer ciertos hechos relacionados con la residencia de Rachiell. En la parte pertinente dice como sigue:

"6. Que el peticionario es un miembro activo de la Marina de los Estados Unidos de América y lleva 22 años de servicio y desde hace 20 meses se encuentra destacado en Fort Allen, Ponce, Puerto Rico, exclusivamente debido a su servicio militar.

"7. Que el peticionario ha hecho de la Marina su carrera por vocación y ama la disciplina que le impone su servicio militar en la Marina.

"8. Que el peticionario ha estado en ocasiones anteriores en Puerto Rico y para el 1959 solicitó de sus superiores que lo trasladasen a Puerto Rico porque le gustaba la isla y le parcía un buen ambiente para vivir con su esposa y sus hijos, por lo que su estadía en Puerto Rico al presente es voluntaria y la orden de traslado a Puerto Rico dictada por sus superiores coincide con su deseo de estar en esta isla."

Recayó resolución denegando la autorización solicitada en la cual el tribunal de instancia expresa que aunque se ha cumplido con los demás requisitos que exige la ley y es favorable el informe rendido por la agencia de Bienestar Público, el peticionario no cumple con la exigencia de residencia del Art. 130 del Código Civil, 31 L.P.R.A. sec. 531, *"cuyo requisito es jurisdiccional."* Su razonamiento aparece contenido en los siguientes párrafos:

"Nuestro Tribunal Supremo ha resuelto que un Sargento del Ejército de los Estados Unidos que, enviado a la Isla como miembro de las fuerzas armadas aquí destacadas, se encuentre en la Isla, no adquiere la residencia legal necesaria para entablar demanda de divorcio ante nuestras cortes. Este principio no ha

sido revocado y por analogía debe ser aplicable a la situación ante nosotros.

"Por entender que de acuerdo con los hechos el peticionario está en Puerto Rico solamente por ser miembro de la Marina de Guerra de Estados Unidos, el Tribunal estima que no ha adquirido la residencia legal necesaria para traer esta acción."

Sin duda alguna el tribunal a quo alude a la opinión emitida en *Foss* v. *Ferris*, 63 D.P.R. 570 (1944), en la cual resolvimos que la disposición del Art. 97 del Código Civil, 31 L.P.R.A. sec. 331, que señala que la parte actora haya residido en la Isla un año inmediatamente antes de interponer la demanda, a menos que la causa en que se funda se cometiere en Puerto Rico o mientras uno de los cónyuges aquí residiere, se refiere a un requisito de domicilio, que presupone la intención de establecer una residencia permanente y que en realidad aquí se permanezca con ese propósito, *animus manendi.* Añadimos que un miembro de las fuerzas armadas que, en cumplimiento de órdenes oficiales, se traslada a la Isla, no adquiere residencia legal por el mero hecho de vivir en un puesto militar situado dentro de nuestros límites territoriales, sino que tal situación es más bien la residencia accidental de un transeúnte y no la que se requiere por dicho Art. 97 como base esencial para poder ejercitar la acción de divorcio.(¹) Sin embargo, posteriormente, en *Green* v. *Green*, 87 D.P.R. 837 (1963), mitigamos el rigor de la regla expuesta y aunque reconocimos que ordinariamente los miembros de las fuerzas armadas conservan el domicilio del lugar en donde ingresan a prestar servicios si allí lo tenían establecido, admitimos la posibilidad de que, cuando concurren determinadas circunstancias, un militar establezca su domicilio en el lugar en que se encuentra des-

---

(¹) El alcance de la opinión de *Foss* v. *Ferris*, supra, en lo que a acciones de divorcio respecta, fue reexaminado y explicado en *Mestre* v. *Pabeyón*, 84 D.P.R. 369 (1962). Véase, además, *González Miranda* v. *Santiago*, 84 D.P.R. 380 (1962).

tacado, siempre que la intención se manifieste en forma genuina y objetiva. (²)

■ 1—Prosapia romana tiene la institución de la adopción en Puerto Rico. Aunque, como veremos, su significación y fundamentos actuales son distintos, en sus orígenes respondió al interés de asegurar la perpetuidad en las familias y, en no pocas ocasiones, sirvió finalidades puramente políticas como la de transmitir la dignidad imperial al seleccionado. Ya en la Ley de Partidas se le conoció como el "prohijamiento", pero andando el tiempo, y así la recibimos de España, pasó a cumplir el cometido de crear por ficción legal relaciones análogas a las de la filiación legítima. Que sepamos, cuestiones de domicilio de los interesados no se consideraban de importancia, y mucho menos, se les atribuía condición de requisito jurisdiccional.

En el derecho común, la adopción era desconocida; de ahí que, en ausencia de una expresión legislativa específica, los tribunales asumieron atribuciones decisivas en la determinación de lo que constituía la base jurisdiccional en los procedimientos de adopción. El concepto del domicilio predominante en otras áreas del derecho de familia se infiltró en esta institución, y en su inicio se aplicó con todo rigor el requisito de unidad de domicilio de todos los interesados—los adoptantes, el adoptado y sus padres naturales. Pero la preocupación que animaba la ausencia del requisito de domicilio respondía al reconocimiento que pudiera recibir en otros estados el decreto de adopción que creaba un nuevo *status* personal entre ciertas personas, y que generaba ciertos derechos y responsabilidades entre las partes, principalmente en el aspecto sucesorio. Taintor, *Adoption in the Conflict of Laws*, 15 U. Pitt. L. Rev. 222 (1954); *Restatement, Conflict of Laws*, § 42; cf. *A* v. *M*, 180 A.2d 541 (N.J. 1962). El

---

(²) Entre otros ejemplos, señalamos, el hecho de vivir fuera del puesto sin que así le hubiese sido exigido por las autoridades militares; la adquisición de propiedad inmueble; y el ejercicio de la franquicia electoral.

énfasis en el requisito de unidad de domicilio, por ser demasiado severo, fue perdiendo virtualidad, especialmente con el mayor desarrollo del principio de reconocimiento recíproco (*comity*). Véase, *Restatement, Conflict of Laws*, §§ 142 y 143.

■ La mayor dificultad estriba en los textos disímiles de los requisitos jurisdiccionales de las leyes de adopción de los distintos estados. "Residencia", que es el requisito que con más frecuencia en ellos se menciona, es un término elástico, "que debe interpretarse a la luz del propósito del estatuto en el cual se emplea," *McGrath* v. *Stevenson*, 77 P.2d 608 (Wash. 1938). En cuanto a estatutos de adopción, véanse, *Eggleston* v. *Landrum*, 50 So.2d 364 (Miss. 1951) e *In re Duren*, 200 S.W.2d 343, 350 (Mo. 1947).

No obstante, se señala en la excelente monografía *The Inadequacy of Domicile as a Jurisdictional Base in Adoption Proceedings*, 17 Rutgers L. Rev. 761 (1963), que se ha ido desarrollando una tendencia a una efectiva intervención de las agencias del estado en los procedimientos de adopción para garantizar plenamente que el bienestar del menor sea el factor decisivo a considerarse en la determinación judicial sobre la conveniencia de crear el nuevo nexo jurídico. Insinúase que esta participación activa de las agencias de bienestar, especie de delegación del *parens patriae* del estado, ha eclipsado la importancia del domicilio de alguna de las partes como requisito puramente jurisdiccional, y se alude a ocho estados que prácticamente lo han abolido como tal en su legislación[3] y a otros seis en que se ha llegado a idéntico resultado por vía de interpretación judicial.[4] De particular interés es el estatuto de Nueva York, que requiere residencia de los padres adoptantes y que el menor haya residido en el hogar de éstos por un período de seis meses, N.Y. Dom. Rel.

---

[3] Alaska, Arkansas, Kentucky, Maine, Minnesota, Tennessee, Washington, y el Distrito de Columbia.

[4] Iowa, Missouri, Nuevo Méjico, Nueva York, Pennsylvania y Wisconsin.

§ 112 (2) y (4), y se ha interpretado que estos requisitos no se refieren a domicilio. Brosnan, *The Law of Adoption*, 22 Colum. L. Rev. 332 (1922).

■ La corriente moderna en Estados Unidos rechaza el concepto de domicilio como fundamento jurisdiccional para la adopción por entender que envuelve una actitud demasiado subjetiva. Se arguye, por otro lado, que la mera presencia física durante un período determinado, independientemente de la intención específica de los interesados, proporciona una base más confiable para facilitar el funcionamiento de la maquinaria de investigación que se dirige a determinar si se cumple el propósito que debe animar la adopción: la protección del menor. Sin duda este enfoque sociológico en contradistinción con la posición tradicionalista se acomoda mejor a las necesidades modernas y logra en forma efectiva el fortalecimiento de la institución de la familia. Merrill, *Toward Uniformity in Adoption Law*, 40 Iowa L. Rev. 299 (1955); Newbold, *Jurisdictional and Social Aspects of Adoption*, 11 Minn. L. Rev. 605 (1927).

Veamos ahora nuestro estatuto.

2—Conviene indicar que no es hasta la aprobación de la Ley Núm. 86 de 15 de junio de 1953 (Leyes, pág. 305), que, al señalar en el Art. 130 del Código Civil, 31 L.P.R.A. sec. 531, las condiciones que debe reunir el adoptante, se incorpora el requisito de que éste deberá haber residido en Puerto Rico por lo menos durante seis meses con antelación a la fecha en que se radique la petición de adopción ante el tribunal correspondiente. Hasta entonces, y aun desde la legislación vigente antes de 1902—Art. 173 del Código Civil español que se hizo extensivo a las islas de ultramar por Real Decreto de 24 de julio de 1889—guardaba silencio sobre el particular. Aun la intervención judicial en la aprobación se limitaba a velar sobre el cumplimiento en la escritura de adopción de

determinados requisitos, Arts. 612 y 613 del Código de Enjuiciamiento Civil. (⁵)

Ahora bien, esta disposición sobre residencia no puede apreciarse aisladamente ni en sentido literal. Su alcance debe fijarse tomando en consideración que forma parte de una reforma que responde a un nuevo enfoque sobre la adopción y que se caracteriza principalmente por el abandono del concepto clásico de que se trata de un contrato privado y por la fijación de una intervención activa del estado a través de agencias apropiadas para salvaguardar el interés de la familia y especialmente del adoptado. (⁶) De ahí que se suprima el otorgamiento de la escritura y se sustituya por un procedimiento de naturaleza judicial. Esta reforma se manifiesta mediante la Ley Núm. 85 de 15 de junio de 1953 (Leyes, pág. 299), que enmendó los Arts. 612 y 613 del Código de Enjuiciamiento Civil, 32 L.P.R.A. secs. 2691 y 2692, y le adicionó los Arts. 613A a 613F, 32 L.P.R.A. secs. 2693 a 2698. (⁷)

(⁵) Nuestra legislación apartóse sustancialmente del procedimiento para aprobación de la adopción y la arrogación prescrita por los Arts. 1825 a 1832 de la Ley de Enjuiciamiento Civil española. (Medina y Marañón, *Leyes Civiles de España*, tomo II, págs. 500–501.)

(⁶) Precisamente el P. de la C. 795, que se convirtió luego en la Ley Núm. 86, contenía una exposición de motivos que enumeraba como sus propósitos, los siguientes (*Diario de Sesiones*, vol II, tomo 2, pág. 1291):

"(A) Proteger al niño para que no se le separe de sus padres cuando éstos, con la debida orientación y ayuda, podrían ofrecerle un buen hogar. Evitar que personas incapacitadas para asumir la responsabilidad de criar y educar niños, adopten; y evitar además que gracias a deficiencias en el procedimiento de adopción, los padres biológicos puedan intervenir con el niño adoptado y obstaculicen su adaptación al hogar adoptivo.

"(B) Proteger a los padres biológicos orientándoles debidamente y evitando el que ellos tomen decisiones con festinación o bajo la presión de problemas y situaciones que acaso podría ayudárseles a resolver,

"(C) Proteger a los padres adoptivos ofreciéndoles información sobre todos los factores que determinan la capacidad del niño para desarrollarse física y mentalmente y garantizándoles que los padres biológicos u otros parientes del adoptado no podrán intervenir con ellos ni establecer con éxito reclamación alguna sobre el niño que dieron en adopción por haberse seguido un procedimiento adecuado para el cese de los deberes y derechos legales que tenían los padres biológicos u otros parientes."

(⁷) Estas nuevas disposiciones siguen sustancialmente la ley uniforme de adopción, que puede encontrarse en 40 Iowa L. Rev. 329 (1955).

Obsérvese que el objetivo cardinal se desprende del Art. 612: "La solicitud contendrá todas las alegaciones que puedan servir de base para determinar *la conveniencia de la adopción* ...."

■ Examinadas en conjunto todas estas disposiciones, (8) parece claro que el requisito de residencia no tiene otro propósito que el de facilitar la investigación que debe practicarse por la dependencia de Bienestar Público sobre las condiciones de los peticionarios, del menor y sus padres biológicos, y demás circunstancias que rodean la solicitud. De otra forma podría impedirse que se llevara a cabo en forma efectiva la supervisión que el Estado se ha impuesto en interés de la familia. Siendo ello así, no podemos darle al requisito de residencia un contenido de domicilio, sino meramente de presencia física. *Herrich* v. *Howe,* 171 P.2d 312 (N.M. 1946).

Como señaláramos anteriormente, gran parte de la preocupación por los sostenedores que propugnan una interpretación estricta de domicilio se refiere al reconocimiento extraterritorial que puede darse a los decretos de adopción. Según

---

(8) "Artículo 613.—Si la persona que se desea adoptar es menor el Tribunal ordenará que, por conducto de la dependencia de Bienestar Público, se lleve a cabo una investigación de los hechos alegados en la solicitud y de las demás circunstancias que concurren en el caso. El secretario del Tribunal notificará la orden a la dependencia de Bienestar Público con copia de la solicitud dentro de los cinco días siguientes a la fecha en que la misma se hubiere dictado. La dependencia de Bienestar Público remitirá un informe por escrito al Tribunal en un término no mayor de sesenta (60) días, a menos que el Tribunal, por causas justificadas, prorrogue dicho término."

"Artículo 613B.—Al efecto de poder determinar si la adopción conviene al menor, el Tribunal *podrá conceder al peticionario la custodia provisional* del menor por un período de seis meses a un año bajo observación de la dependencia de Bienestar Público. Este período podrá reducirse, aumentarse o revocarse si las circunstancias así lo justificaran. Transcurrido el período de la custodia provisional del menor y radicado el informe final de la dependencia de Bienestar Público el Tribunal podrá autorizar la adopción. En caso de que se denegare la adopción, si el menor no tuviera padre, madre ni tutor, el Tribunal proveerá para la custodia y tutela del menor."

adelantamos, prevalece actualmente el principio de reconocimiento recíproco o cortesía. Precisamente nuestro legislador tomó medidas dirigidas a lograr una relación armónica con otras jurisdicciones mediante las enmiendas apropiadas a la Ley del Registro Demográfico. (⁹)

3—Finalmente, es ficticia la analogía que se pretende establecer del requisito de domicilio entre las acciones de divorcio y los procedimientos de adopción. En la monografía previamente citada *The Inadequacy of Domicile as a Jurisdictional Base in Adoption Proceedings*, 17 Rutgers L. Rev. 761, 785–786 (1963), se discute este aspecto de la cuestión en forma tan persuasiva e inigualable, que nos permitimos trasladarla íntegramente a la presente opinión. Dice:

"Los proponentes del domicilio [para la adopción] pueden adelantar el fundamento por analogía a los supuestos de legitimación y divorcio en que el domicilio ha sido requerido como un ingrediente constitucional para el procedimiento en los méritos. Originalmente, los casos principales de divorcio acogen el domicilio como requisito ya que implica un nexo de tal permanencia entre la persona y el lugar que rige la creación de relaciones y deberes jurídicos de la mayor importancia. Sin embargo, se

---

(⁹) La Ley Núm. 84 de 15 de junio de 1953 (Leyes, pág. 297), adicionó los Arts. 21A a 21D a la Ley del Registro Demográfico. Los Arts. 21C y 21D, pertinentes al reconocimiento recíproco, leen:

"Artículo 21C.—Cualquier adopción hecha fuera de Puerto Rico, de persona nacida en Puerto Rico, se inscribirá a solicitud de parte interesada, en el Registro Demográfico, previa presentación de copia autenticada de la resolución o decreto autorizando la adopción, siguiéndose el mismo procedimiento especificado en el artículo anterior. Si de dicha resolución o decreto no constaren todas las circunstancias necesarias para la inscripción, la parte interesada deberá complementarla mediante declaración jurada que se unirá a los demás documentos.

"Artículo 21D.—En caso de que el adoptado hubiere nacido fuera de Puerto Rico, pero fuere adoptado en Puerto Rico, será deber del Jefe del Negociado del Registro Demográfico y Estadísticas del Departamento de Salud remitir, al funcionario correspondiente del lugar donde hubiere nacido el adoptado, copia certificada de la resolución dictada por el tribunal en el caso de adopción.

"El Registro Demográfico llevará un registro especial para inscripciones de la adopciones de personas nacidas fuera de Puerto Rico y adoptadas en Puerto Rico."

descansa demasiado en la tradición en el campo del divorcio. Se ha creído tan profundamente que el domicilio es determinante en el área del divorcio que ello ha trascendido los cambios reales o aparentes en los conceptos sociales. Además entrelazado con la analogía del divorcio se encuentra el fundamento del debido procedimiento que también se invoca por los defensores del requisito de domicilio. ([10])

"No obstante, en los procedimientos de divorcio concurren ciertos factores que debilitan su aplicación a los casos de adopción. Por ejemplo, la desintegración de la vida familiar es un síntoma de deterioro de la sociedad que ha alarmado a muchos. La renuencia a conceder divorcios fáciles constituye en parte una reacción a este mal social. Pero las leyes de adopción crean relaciones familiares, la adopción tiene algo que brindar por vía de la estabilidad y salud social, factores que promueven el bienestar del estado y la protección de los menores. Así, es obvio el deseo de facilitar la adopción, mientras que una actitud contraria prevalece en cuanto al divorcio.

"Las diferencias notables que existen entre los distintos estados en el área de las causas para el divorcio es un factor ausente en el caso de la adopción. Por tanto, en el procedimiento de divorcio está presente un elemento importante que no concurre en la adopción, que no facilita la aplicación del concepto de reconocimiento recíproco."

*Por los fundamentos expuestos, se revocará la sentencia dictada por el Tribunal Superior, Sala de Ponce, en 23 de septiembre de 1964, y se devolverá el caso para ulteriores procedimientos.*

---

([10]) El requisito de debido procedimiento en la adopción está previsto en Puerto Rico por la disposición que requiere la citación, y permite la comparecencia de los padres biológicos del menor, a quienes se intenta privar de la patria potestad y custodia.