Opinión de conformidad emitida por
la Jueza Asociada Se-ñora Pabón Charneco,
a la que se le une el Juez Aso-ciado Señor Kolthoff Caraballo y el Juez Asociado Señor Rivera García.
Por entender que la normativa vigente que regula el derecho de adopción en Puerto Rico no permite que un me-nor sea adoptado por sus abuelos cuando este siga relacio-nándose con su madre biológica, a quien reconoce como tal, estoy conforme con que se confirme el dictamen del Tribunal de Apelaciones.
Los hechos de este caso son sencillos y no están en controversia. A continuación los exponemos brevemente.
*893 I
El 18 de julio de 2008, los peticionarios presentaron ante el Tribunal de Primera Instancia, Sala de Guayama, una solicitud para adoptar a su nieto S.A.C., quien en aquel momento tenía nueve (9) años de edad. Expusieron, entre otras cosas, que: (1) ambos son mayores de edad; (2) el menor se encuentra bajo la custodia de los peticionarios desde que nació; (3) la madre biológica, Gloria Ileana Carrillo, otorgó una declaración jurada para expresar su con-sentimiento a la adopción del menor, y (4) el peticionario está pensionado y la fuente de ingresos de ambos proviene de beneficios de veteranos del primero. Al momento de pre-sentarse la petición de adopción, la madre del menor tenía otros tres (3) hijos y se encontraba embarazada. Con excep-ción de S.A.C., los demás menores viven con ella. La mamá de S.A.C. vivió con este hasta que cumplió cinco (5) años de edad, fecha cuando decidió mudarse con su entonces com-pañero sentimental. Para S.A.C. su madre biológica es su mamá, puesto que le dice “mami”. Sin embargo le dice “papi” a su abuelo, el Sr. Samuel Carrillo Vázquez.
La Trabajadora Social del Departamento de la Familia y la Procuradora de Asuntos de Familia no se opusieron a la adopción.
Por su parte, la madre biológica no pretende desligarse del vínculo que la une a su hijo y tampoco le niega cobijo. Más bien aseveró ante el foro de instancia que prestaba su consentimiento para la adopción, porque el menor prefiere residir con los abuelos. Véase Apéndice del certiorari, pág. 30.
El Tribunal de Primera Instancia rechazó la solicitud de adopción. Señaló que “no es suficiente una determinación de que el menor tendrá mayores garantías económicas con los adoptantes”. Apéndice del certiorari, pág. 31. También expresó que las circunstancias del caso eran medulares para determinaciones de custodia que no implicaban un *894 caso idóneo en el contexto de la normativa de adopción. Id., pág. 30. Concluyó que la petición desvirtúa los propósitos nobles de la normativa de adopción, porque esta salva-guarda el interés social de niños maltratados, desampara-dos, abandonados y sin hogar alguno. Id., pág. 31.
Por estar inconformes, los peticionarios presentaron una moción de solicitar determinaciones de hechos adicio-nales, la cual fue denegada por el Tribunal de Primera Instancia. Posteriormente, acudieron en alzada al Tribunal de Apelaciones. Este foro confirmó la decisión del Tribunal de Primera Instancia. Razonó que en este caso no se daba el rompimiento de la relación del menor con su madre bio-lógica, porque esta pretendía seguir interactuando con el menor en una relación filial afectiva. Expuso que esta pre-tensión de la madre refleja su deseo de seguir siendo “mami”. Al igual que el foro de instancia, el foro a quo señaló que la figura legal para lograr eso sin que la madre rompa sus vínculos legales con el menor y sin causarle a este una confusión en sus relaciones afectivas, es la conce-sión de la custodia a los abuelos del menor. Asimismo apuntó que lo único que se conseguiría al conceder la adop-ción del menor a sus abuelos es que el abuelo, quien está pensionado por veteranos, reciba un cheque adicional del Seguro Social Federal a nombre del menor. En fin, con-cluyó que esa relación filial entre el menor y la madre es contraria al mandato claro de que se rompa todo vínculo legal con la familia biológica, según recogida en el Art. 137 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 538, por-que el legislador contempló un rompimiento de vínculos y no una conversión de madre a hermana.
Nuevamente, por estar insatisfechos con ese dictamen, los peticionarios acuden ante nos mediante un recurso de certiorari. En síntesis, alegan que el Tribunal de Apelacio-nes erró al resolver que la petición de adopción es contraria a la política pública y a la normativa que rige la materia de adopción en Puerto Rico por el hecho de que la madre bio-lógica continúe relacionándose con su hijo.
*895 HH { — i
La adopción es un acto jurídico solemne, mediante el cual se sustituye totalmente el parentesco familiar bioló-gico o natural de una persona por otro, en un procedi-miento judicial rigurosamente reglamentado. Virella v. Proc. Esp. Rel. Fam., 154 D.P.R. 742, 753 (2001); Feliciano Suárez, Ex parte, 117 D.P.R. 402, 406 (1986). Como regla general, supone la ruptura total del vínculo jurídico-familiar de una persona con su parentela biológica y la consecuente filiación de esta con quien o quienes han ex-presado su voluntad de que legalmente sea su hijo o hija. López v. E.L.A., 165 D.P.R. 280, 299 (2005); Zapata et al. v. Zapata et al., 156 D.P.R. 278, 286 (2002). De esta manera, se extinguen totalmente los vínculos jurídicos entre el adoptado y su familia biológica y para todos los efectos el adoptado se considera como si hubiera nacido hijo del adoptante con todos los derechos, deberes y obligaciones que le corresponden por ley. Virella v. Proc. Esp. Reí. Fam., supra, pág. 754; Feliciano Suárez, Ex parte, supra, pág. 406; Rivera Coll v. Tribunal Superior, 103 D.P.R. 325, 332 (1975).
El Art. 137 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 538, recoge en su primer párrafo los efectos de la adop-ción descritos:
Una vez decretada la adopción, el adoptado será considerado para todos los efectos legales como hijo del adoptante con to-dos los derechos, deberes y obligaciones que le corresponden por ley. La adopción por decreto final y firme extinguirá todo vínculo jurídico entre el adoptado y su familia biológica o adoptiva anterior. (Enfasis suplido.)
De ahí que en Puerto Rico solamente existe la adopción plena, distinto a como ocurre todavía en otros países donde persiste la adopción simple o menos plena.(1) Véase R. Se *896 rrano Geyls, Derecho de familia de Puerto Rico y legisla-ción comparada, San Juan, Ed. Programa de Educación Jurídica Continua de la U.I.P.R., 2002, Vol. II, págs. 1086 y 1093. “[E]n general, la adopción plena confiere al adoptado una filiación que sustituye a la de origen, con la única ex-cepción de que se mantienen los impedimentos matrimo-niales, mientras que la adopción simple crea un estado de hijo entre adoptante y adoptado que no se extiende a la familia del primero.” íd., pág. 1093. Así, en la adopción plena prevalece el principio romano adoptio naturam imi-tatur (la adopción imita a la naturaleza) porque establece el parentesco del adoptado con el adoptante y toda su familia. íd., pág. 1086. “El adoptado se convierte para to-dos los efectos jurídicos en hijo matrimonial del adoptante ...”. íd. Véase, además, J. Guitrón Fuentevilla, “Aplicación del método comparativo a las disposiciones del libro pri-mero del Código Civil de Puerto Rico de 1930 (Personas y Familia) y a las mismas del Código Civil de México, Distrito Federal de 2000 y criterios jurisprudenciales en Derecho Familiar en ambos países”, XLI (Núm. 2) Rev. Jur. U. I.P.R. 317, 336 (2007). Sin embargo, la adopción menos plena no crea parentesco entre la familia biológica del adoptante y el adoptado. Serrano Geyls, op. cit., pág. 1086.
Empero, por vía jurisprudencial, este Tribunal reconoció una excepción a la norma general de rompimiento de vínculos. En Ex parte J.A.A., 104 D.P.R. 551 (1976), la pe-ticionaria (una mujer soltera) solicitó adoptar a la hija de su ex compañero sentimental. Allí señalamos que cuando la petición de adopción se hace individualmente, es decir, el adoptante es una sola persona y, a su vez, esta no es el cónyuge del padre o la madre del niño, el tribunal deberá determinar si la ruptura del parentesco biológico del adop- *897 tado opera respecto de ambas líneas (paterna y materna), o solamente respecto de una. Id., pág. 558. Véase, además, Virella v. Proc. Esp. Reí. Fam., supra, págs. 754-755 esc. 27. Al fundamentar esa determinación dijimos que, en ca-sos de adopción individual, el Código Civil de Puerto Rico no impide que el adoptado, al adquirir un padre adoptivo, siga vinculado en su parentesco natural con su madre bio-lógica y viceversa. Ex parte J.A.A., supra, pág. 558.
No obstante, ese no fue el único fundamento que esbo-zamos al establecer la excepción. También expresamos que “mediante la adopción debe crearse para el adoptado una situación que en lo posible se iguale a la condición natural del ser humano”. Ex parte J.A.A., supra, pág. 558. Esto, sin duda, pesó en nuestra determinación al destacar el hecho de que la niña no había conocido otra madre que la peticio-naria, por lo que para ella sus padres eran la peticionaria y su papa biológico (excompañero sentimental de la peticionaria). íd., págs. 559-560. Así, resaltamos que la adopción por la peticionaria venía a consagrar ante la ley la situación de hechos que la niña había conocido durante toda su vida. íd., pág. 560. Señalamos que si se consentía la adopción por la peticionaria a base de que la niña dejara de ser hija de su padre, se desnaturalizaría el propósito legislativo. íd. Por ende, concluimos que la niña podía se-guir siendo hija de su padre y tener a la peticionaria como su legítima madre. íd.
A posteriori, esta excepción fue codificada en el primer párrafo del Art. 138 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 539, mediante la Ley Núm. 8 de 19 de enero de 1995. Véase Serrano Geyls, op. cit, págs. 1196-1197. Ese artículo dispone, en lo pertinente, que
... los vínculos jurídicos del adoptado con su familia paterna o materna anterior subsistirán cuando el adoptado sea hijo del cónyuge del adoptante, aunque el padre o madre hubiere fa-llecido a la fecha de presentación de la petición de adopción, o cuando el adoptado proviene de una única filiación y es adop- *898 tado por persona de distinto sexo al del padre o madre que lo ha reconocido como su hijo. (Enfasis suplido.) Art. 138 del Có-digo Civil de Puerto Rico, supra.
El Art. 178 del Código Civil de España contenía, hasta el 2005,(2) una disposición similar. Señalaba que:
1. La adopción produce la extinción de los vínculos jurídicos entre el adoptado y su familia anterior.
2. Por excepción subsistirán los vínculos jurídicos con la fami-lia paterna o materna, según el caso:
1. Cuando el adoptado sea hijo del cónyuge del adoptante, aunque el consorte hubiere fallecido.
2. Cuando sólo uno de los progenitores haya sido legalmente determinado y el adoptante sea persona de distinto sexo al de dicho progenitor, siempre que tal efecto hubiere sido solicitado por el adoptante, el adoptado mayor de doce años y el padre o madre cuyo vínculo haya de persistir. Véanse: A.J. Pérez Mar-tín, Derecho de Familia: adopción, acogimiento, tutela y otras instituciones de protección de menores, Valladolid, Ed. Lex Nova, 1995, T. 5, págs. 547-548. Véase, también, el Código Civil Español en: http://civil.udg.edu/normacivil/estatal/cc/ indexcc. htm
Según la segunda excepción, que es la misma que reco-noció este Foro en Ex parte J.A.A., supra, para que no se extinguieran los vínculos jurídicos después de la adopción, respecto del padre o la madre, era necesario que, inter alia, solamente una persona fuera la que adoptara porque, de *899 ser dos, obligatoriamente serían de distinto sexo. Pérez Martín, op. cit., pág. 548. Lógicamente, la excepción ex-cluía la adopción en pareja, porque solamente se permitía adoptar conjuntamente a un hombre y a una mujer. Por consiguiente, al requerir que la pareja adoptante fuera de distinto sexo, forzosamente, uno de los adoptantes sería del mismo sexo del progenitor y no se cumpliría la excepción. Ese requisito es totalmente aplicable en nuestra jurisdic-ción, porque aquí solamente pueden adoptar parejas casa-das entre sí que sean de sexos opuestos. Véanse: Arts. 68 y 133 del Código Civil de Puerto Rico, 31 L.P.R.A. sees. 221 y 534; Virella v. Proc. Esp. Reí. Fam., supra.
Como puede apreciarse, según lo señalamos en Ex parte J.A.A., supra, pág. 558, el propósito subyacente mediante esta excepción es permitirle al adoptado estar en una si-tuación que, en lo posible, se iguale a la condición natural del ser humano. Es decir, que el adoptado pueda relacio-narse con una figura paterna y materna. Ello se logra per-mitiendo que, por excepción, luego de la adopción subsista el vínculo biológico entre el adoptado y el progenitor que lo reconoció, si este tiene el sexo opuesto del adoptante.
Por otro lado, la institución de la adopción tiene varios fines. Hemos expresado que esta busca brindarles a los niños y las niñas sin padres la oportunidad de que se pue-dan criar y educar en el seno de un hogar adecuado. Zapata et al. v. Zapata et al., supra, pág. 286. “Ello, en aten-ción a la problemática social que aqueja a nuestra sociedad de niños abandonados o maltratados dentro de un hogar en el cual se supone que reciban amor, protección y cuidado.” Zapata et al. v. Zapata et al., supra, pág. 287. Véase, ade-más, López v. E.L.A., supra, pág. 300. A su vez, la adopción les facilita a los padres sin hijos la oportunidad de tenerlos y asegurar la continuidad de su familia. Virella v. Proc. Esp. Reí. Fam., supra, pág. 754; M.J.C.A., menor v. J.L.E.M., menor, supra, págs. 916 y 922. Pero sobre todo, la institución de la adopción busca salvaguardar el interés *900 del adoptado. Ex parte Warren, 92 D.P.R. 299, 302 (1965). Por eso, hemos afirmado que el interés principal de la adopción es el bienestar del menor. López v. E.L.A., supra, pág. 300; Virella v. Proc. Esp. Reí. Fam., supra, pág. 754.
En 1995 se aprobó legislación para enmendar la figura de la adopción en Puerto Rico, tanto en su dimensión pro-cesal como sustantiva. En su vertiente procesal, la Ley Núm. 9 de 19 de enero de 1995 (32 L.P.R.A. sec. 2699 et seq.), enmendó la Ley de Procedimientos Legales Especiales. En su exposición de motivos, esta ley declara que el Estado tiene un interés apremiante en cuidar y pro-mover la conservación de la unidad familiar y en prevenir la desintegración de la familia. Así, es un derecho inalienable de los niños el poder vivir y crecer en el seno de un hogar feliz y al calor de sus padres. Sin embargo, también expone que el Estado tiene el deber social de tomar todas las medidas a su alcance para proteger el bienestar de los menores de edad de los abusos y abandonos. En ese sen-tido, el estatuto señala que busca proteger particular-mente a los menores maltratados, abandonados y desam-parados para que, mediante la adopción, estos puedan formar parte de hogares estables.
Mediante esta ley, la Asamblea Legislativa pretendió ampliar y facilitar el uso del mecanismo de la adopción para que pudiera ser utilizado de forma más amplia y rá-pida por personas que desean acoger como padres en el seno de su hogar a menores e incapacitados en estado de desamparo y abandono. López v. E.L.A., supra, pág. 300. En esencia, esta ley se aprobó para superar los serios es-collos y dilaciones innecesarias que caracterizaban el pro-cedimiento de adopción anterior. íd. En ese contexto, “fa-vorece la ruptura expedita de los lazos biológicos para crear una nueva y mejor relación paterno filial no determinada por la consanguinidad”. (Énfasis suplido.) Estrella, Monge v. Figueroa Guerra, 170 D.P.R. 644, 659 (2007).
*901 Por su parte, la Ley Núm. 8 de 19 de enero de 1995 (31 L.P.R.A. sec. 531 et seq.) reguló la adopción en su vertiente sustantiva. Por medio de esta ley se enmendó el articulado sobre la adopción en el Código Civil de Puerto Rico. Véase Virella v. Proc. Esp. Reí. Farm., supra, pág. 754. Este esta-tuto tuvo el propósito de flexibilizar la institución de adopción. Id., pág. 755. Asimismo, en su exposición de mo-tivos esta ley establece que los niños tienen como derecho inalienable vivir y crecer en el seno de un hogar feliz y al calor de sus padres progenitores, y que es deber del Estado tomar las medidas necesarias para la protección y el bien-estar de la niñez y de la juventud.
Como puede apreciarse, “[a]mbas legislaciones tuvieron idéntico propósito: utilizar el mecanismo de adopción para brindarles hogares a menores que así lo necesitaran”. (En-fasis en el original.) López v. E.L.A., supra, pág. 301. Ade-más, ambas leyes “se mueven entre dos polos: el derecho de los niños a vivir con sus progenitores y el deber del Estado de proteger a esos niños en casos de abandono o maltrato”. Serrano Geyls, op. cit, pág. 1100.
En cuanto a la interpretación de estos estatutos, hemos señalado que deben interpretarse de forma liberal, a favor del adoptado. López v. E.L.A., supra, pág. 303; Virella v. Proc. Esp. Reí. Fam., supra, pág. 756. No obstante, tam-bién hemos sido enfáticos al advertir que la liberalidad en la interpretación no puede llevarnos a violar la intención legislativa y, tampoco, a consagrar absurdos. Id.
Ciertamente, en nuestro ordenamiento no existe ningún impedimento para que un ascendiente adopte a un descendiente. M.J.C.A., menor v. J.L.E.M., menor, supra, pág. 931. Sin embargo, esto no significa que un ascen-diente pueda adoptar a un descendiente al margen de la regla general de que la adopción desarraiga al adoptado de todo vínculo de parentesco y de todo derecho respecto a su familia biológica. Véase Id., pág. 933.
Precisamente, en M.J.C.A., menor v. J.L.E.M., menor, *902 supra, este Foro atendió una petición de adopción presen-tada por los abuelos paternos de un huérfano de padre y madre. En ese caso, la controversia giraba en torno a si los abuelos paternos podían adoptar a su nieto, aun cuando fueron nombrados tutores testamentarios, no rindieron las cuentas de la tutela y la abuela materna no fue oída en el procedimiento donde tanto ella como el hermano materno del menor se oponían a la adopción. íd., págs. 914-915. El Tribunal resolvió que los abuelos paternos tenían que ren-dir las cuentas de la tutela para ser adoptantes, por lo que el Tribunal de Primera Instancia no tenía jurisdicción hasta que no se verificasen las operaciones correspondien-tes sobre la tutela. íd., págs. 931. Además, resolvió que la abuela materna tenía el derecho a ser oída en el proceso de adopción. íd., pág. 932. Por ende, se decretó la nulidad de la adopción y se devolvió el caso al foro de instancia para que celebrara una vista en su fondo con intervención de la abuela materna y se les diera la oportunidad a los abuelos paternos de rendir las cuentas de la tutela. íd., págs. 934-935.
Sin embargo, en un dictum, el Tribunal acotó que, aun-que como regla general la adopción rompe el vínculo bioló-gico del adoptado, esta —por los abuelos paternos— no ne-cesariamente tenía que desvincular al menor de su familia biológica por la línea materna. íd., págs. 933-934. Señaló que el fundamento que se esbozó en el caso de Ex parte J.A.A., supra, era igualmente válido a ese escenario porque se trataba de un menor huérfano de padre y de madre, con un hermano biológico por la línea materna y donde los as-cendientes de primer grado por ambas líneas habían de-mostrado un gran interés en el bienestar del menor. íd., pág. 934.
Con independencia de que tales pronunciamientos se hi-cieran por medio de un dictum, en general, la extrapola-ción que hizo el Tribunal en M.J.C.A., menor v. J.L.E.M., menor, supra, de la excepción reconocida en Ex parte J.A.A., supra, tenía unas bases análogas. De ser adoptado *903 por sus abuelos paternos y mantenerse su relación con su abuela y hermano por la línea materna, se hubiera creado para él una situación similar a la condición natural del ser humano, pues podría estar vinculado a una figura paterna (abuelo paterno), materna (abuela paterna), a un hermano y a su abuela materna. Además, al ser huérfano no existía el problema de que mantuviera el vínculo biológico del me-nor por la línea materna, porque éste no iba a tener más de una mamá.
Posteriormente, en Virella v. Proc. Esp. Reí. Fam., supra, este Tribunal se fundamentó en los pronunciamientos que hizo en M.J.C.A., menor v. J.L.E.M., menor, supra, para emitir otro dictum de esa índole. Allí, los abuelos pa-ternos presentaron una petición conjunta para adoptar a su nieta, que luego enmendaron para que el abuelo paterno apareciera como adoptante único. La enmienda se debió a que la madre biológica de la menor quería retener la patria potestad y la custodia legal sobre su hija, y deseaba que esta conservara su segundo apellido. Así, la controversia que tuvo el Tribunal ante sí era si las excepciones a la norma de adopción conjunta para los cónyuges estableci-das en el Art. 133 del Código Civil, supra, constituían una enumeración taxativa o meramente ilustrativa. Virella v. Proc. Esp. Reí. Fam., supra, pág. 752. El Tribunal resolvió que las excepciones a la norma de adopción conjunta eran una enumeración taxativa. Id., pág. 758. Por lo tanto, de-terminó que el abuelo no podía adoptar individualmente porque estaba casado. Id., pág. 760.
No obstante, el Tribunal no se conformó con resolver la controversia que tenía ante su consideración. Nuevamente emitió un dictum en el que señaló, citando a M.J.C.A., me-nor v. J.L.E.M., menor, supra, pág. 934, que “nada impide que los tribunales, en casos particulares, concedan la adop-ción y opten por conceder la patria potestad a los abuelos paternos con la custodia compartida’ entre estos y la madre biológica del menor”. (Citas omitidas.) Virella v. Proc. Esp. Reí. Fam., supra, pág. 760. Es decir, el Tribunal fue más *904 lejos, porque intimó que la adopción no tiene que desvincu-lar necesariamente a un menor de su madre cuando este es adoptado por sus abuelos. Este Foro ignoró que en M.J.C.A., menor v. J.L.E.M., menor, supra, no había de por medio una madre biológica.
Por eso, a mi juicio, esas expresiones se abstrajeron de los fundamentos que se esgrimieron cuando se reconoció la excepción de Ex parte J.A.A., supra. En el supuesto de que se permitiera la adopción conjunta de los abuelos y, a su vez, que no se rompiera el vínculo biológico entre la madre y el adoptado, este hubiera tenido un padre y dos madres, siendo su progenitora, además, su hermana legal. A nues-tro juicio, eso no crearía para el adoptado una situación similar a la condición natural del ser humano.
Con este marco teórico en mente, procedemos a analizar los hechos del presente caso.
III
Aquí no estamos ante un menor abandonado, maltra-tado, desamparado o necesitado de un hogar. Aunque reco-nocemos que la adopción puede ser asequible a otras ins-tancias en las cuales no medien estrictamente esas condiciones, lo cierto es que la política pública acuciante proyectada en las Leyes Núms. 8 y 9, supra, es proteger a menores enmarcados en ese perfil. Tampoco estamos ante una petición de adopción de vínculo sencillo en la que se busca darle un padre al menor S.A.C. Aquí la solicitud de adopción es de doble vínculo (abuelo y abuela), por lo que no aplica la excepción reconocida en Ex parte J.A.A., supra, estatuida en el Art. 138 del Código Civil, supra. Asimismo, me parece que los fundamentos que movieron al Tribunal a establecer esa excepción no están presentes en el caso de autos.
Si permitimos que los peticionarios adopten al menor y que, por excepción, la madre biológica siga relacionándose *905 con este en calidad de mamá, subsistiría una relación filial afectiva idéntica a la del parentesco biológico, pero con una anomalía palpable. Los peticionarios se convertirán de jure en los padres del menor, y su madre, a quien este considera su mamá, en su hermana legal. Nos parece que ello no crearía para el adoptado una situación que, en lo posible, se iguale a la condición natural del ser humano. Si se concede la adopción, la ley formalizaría una realidad distinta a la experimentada por S.A.C., porque convertiría a su abuela en su madre legal, cuando este a quien reconoce como “mami” es a su madre biológica. En este caso, su ma-dre se convertirá en su hermana legal y sus hermanos en sus sobrinos legales. Por eso, creo que la concesión de la adopción según esos términos no es afín a la intención le-gislativa, según expuesta en las Leyes Núms. 8 y 9, supra, que favorece la ruptura expedita de los lazos biológicos para crear una nueva y mejor relación paterno filial no determinada por la consanguinidad. López v. E.L.A., supra, pág. 300.
Aquí, distinto a lo ocurrido en Ex parte J.A.A., supra, la adopción no viene a consagrar ante la ley la situación que S.A.C. ha conocido durante toda su vida. Si bien el menor reconoce a su abuelo como su papá, no es menos cierto que para él su mamá es su progenitora. De hecho, esta no le niega cobijo a S.A.C. Lo que señala es que S.A.C. prefiere residir con los abuelos. Tales expresiones demuestran que la progenitora está dispuesta a hacerse responsable de S.A.C. y a seguir fungiendo su rol de madre.
Por otro lado, como indicaron tanto el Tribunal de Pri-mera Instancia como el Tribunal de Apelaciones, nada im-pide que los peticionarios soliciten la custodia de S.A.C. En primer lugar, las determinaciones sobre la custodia en nuestra jurisdicción deben hacerse a base del bienestar y los mejores intereses del menor. Rivera v. Morales, 167 D.P.R. 280, 293 (2006); Nudelman v. Ferrer Bolívar, 107 D.P.R. 495, 509 (1978); Marrero Reyes v. García Ramírez, *906 105 D.P.R. 90, 104 (1976). No existe una regla mecánica de que los padres biológicos deben prevalecer siempre en los reclamos de custodia. Marrero Reyes v. García Ramírez, supra, pág. 105. Por ello, es necesario que los tribunales consideren distintos factores al momento de determinar el bienestar del menor al adjudicar los casos de custodia. Es-tos son: la preferencia del menor, su sexo, edad, salud mental y física; el cariño que pueden brindarle las partes en controversia; la habilidad de las partes para satisfacer las necesidades afectivas y morales del menor; la interrelación del menor con las partes y con otros miembros de la fami-lia; el grado de ajuste del menor al hogar, la escuela y la comunidad donde vive, y la salud psíquica de las partes. Rexach v. Ramírez, 162 D.P.R. 130, 160-161 (2004); Ma-rrero Reyes v. García Ramírez, supra, pág. 105. Por lo tanto, si realmente el mejor bienestar de S.A.C. está con sus abuelos, aunque los padres biológicos soliciten la cus-todia no se les concederá. Así lo provee nuestro ordena-miento.
En segundo lugar, la madre de S.A.C. no le ha negado cobijo. Además, no surge de los autos que esta se haya despreocupado por el menor o que lo haya maltratado, abandonado o despreciado. Al contrario, ella lo que dice es que consiente la adopción porque eso es lo que quiere S.A.C. A nuestro juicio, ello revela que la madre sí se pre-ocupa por el menor y quiere lo mejor para él. Por eso, no podemos colegir categóricamente que si la madre tuviera la custodia del menor se trastocaría la seguridad y estabili-dad de este.
Ahora bien, distinto a la custodia, si se le concede la adopción a los peticionarios, el abuelo del menor, el señor Carrillo Vázquez, podrá solicitar un beneficio económico adicional al que actualmente recibe por parte del Gobierno Federal por tener un dictamen de incapacidad. Si adopta a S.A.C. podría recibir un cheque adicional en concepto de seguro social a nombre del menor. Véase Sec. 202(d)(1) del *907 Social Security Act,(3) 42 U.S.C.A. sec. 402 (establece que los hijos menores dependientes de las personas incapacita-das al amparo de ese estatuto, tienen el derecho a recibir un beneficio económico). Véase, además, Torres Rodríguez v. Carrasquillo Nieves, 177 D.P.R. 728 (2009).
No cabe duda de que uno de los fines de la adopción es que al adoptado se le provea seguridad económica. Ese fin en sí mismo es loable. Sin embargo, este no puede justificar toda forma como se pretenda satisfacer: “el fin no siempre justifica los medios.”
En primer lugar, creo que la petición de adopción no puede fundamentarse en la obtención de un beneficio eco-nómico de esta naturaleza porque existe el riesgo de que futuros adoptantes hagan peticiones de adopción con el propósito de recibir la ayuda económica que proporcionan distintas entidades del Gobierno, como lo es el seguro social, para beneficiarse a sí mismos y no al adoptado. No debemos olvidar que en estos casos, por ser el adoptado menor de edad, será el adoptante quien, como norma general, termine administrando el dinero que reciba el primero. Además, es muy difícil determinar si el adoptante quiere adoptar para ayudar al menor o para ayudarse a sí. Por eso, el mero hecho de que la concesión de la adopción esté relacionada con este tipo de beneficio, plantea la posibili-dad de que se pueda defraudar al Gobierno.
En segundo lugar, considero que la seguridad económica de un menor no puede estar supeditada a la posibilidad de que con la adopción se pueda recibir un beneficio econó-mico por parte del Gobierno. Ello, porque la obtención de tal beneficio no está garantizada y la adopción no debe evaluarse a base de meras posibilidades. Tiene que haber la mayor certeza posible de que el menor tendrá seguridad económica. Después de todo, el decreto de adopción tiene que basarse en el mejor interés y bienestar del menor. Por *908 eso, entiendo que la finalidad de la seguridad económica se tiene que analizar al momento de la petición de la adopción y no a base de una posibilidad futura. Es decir, si el adop-tante puede brindarle seguridad económica al adoptado cuando hace la petición de adopción.
En consecuencia, no creo que sea cónsono con los mejo-res intereses de un menor que es candidato a ser adoptado, el que los tribunales consideren como uno de los criterios para conceder la adopción, que el Gobierno le pueda pro-porcionar un beneficio económico. Por un lado, ello propicia que personas inescrupulosas quieran adoptar para benefi-ciarse de esa ayuda económica y, por otro lado, sujeta o condiciona la seguridad económica del menor a la posibili-dad de que el Gobierno conceda ese beneficio. Esto no le hace justicia a ningún menor que pueda ser adoptado.
IV
Por los fundamentos expuestos, procede que se confirme el dictamen del Tribunal de Apelaciones por entender que no procede la adopción del menor en las circunstancias del caso por ser contraria a la normativa vigente que regula el derecho de adopción en nuestra jurisdicción.

 La distinción entre la adopción plena y menos plena apareció en el Derecho Justiniano. “La adopción plena se daba cuando el adoptante era ascendiente consan *896 guíneo del adoptado. Sus efectos eran todos los inherentes a la patria potestad. En la menos plena, el adoptado se conservaba dentro de su grupo familiar biológico y adquiría prácticamente sólo el derecho a suceder abintestato al adoptante.” (Escolio omitido.) menor v. J.L.E.M., menor, 124 D.P.R. 910, 916 (1989).

 En 2005, el Art. 178 del Código Civil de España fue enmendado mediante la Ley 13/2005 de 1 de julio, por la que se modificó el Código Civil en materia de derecho a contraer matrimonio (BOE núm. 157, de 02-07-2005, pág. 23632-23634). Actualmente ese artículo expone:
“1. La adopción produce la extinción de los vínculos jurídicos entre el adoptado y su familia anterior.
“2. Por excepción subsistirán los vínculos jurídicos con la familia del progenitor que, según el caso, corresponda:
“1. Cuando el adoptado sea hijo del cónyuge del adoptante, aunque el con-sorte hubiere fallecido.
“2. Cuando sólo uno de los progenitores haya sido legalmente determinado, siempre que tal efecto hubiere sido solicitado por el adoptante, el adoptado mayor de doce años y el progenitor cuyo vínculo haya de persistir.
“3. Lo establecido en los apartados anteriores se entiende sin peijuicio de lo dispuesto sobre impedimentos matrimoniales.” Véase el Código Civil Español en: http://civil.udg.edu/normacivil/estatal/cc/indexcc.htm

 Ley Púb. Núm. 92-603 de 14 de agosto de 1935, conocida como Social Security Act, Títulos IV-A y XVI, según enmendada.