

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Samuel Carrillo Vázquez<br>Ana I. Colón Ortiz<br><br>Ex Parte<br><br>Peticionario | Certiorari<br><br>2011 TSPR 75<br><br>181 DPR _____ |

Número del Caso:   CC        - 2009 - 202

Fecha: 24 de mayo de 2011

Tribunal de Apelaciones:

Región Judicial de Guayama Panel XI

Juez Ponente:

Hon. Rafael Martínez Torres

Abogado de la Parte Peticionaria:

Lcdo. Rafael Torres River            a
Servicios Legales de Puerto Rico, Inc.

Oficina de la Procuradora General:

Lcda. Amir Cristina Nieves Villegas
Procuradora General Auxiliar

Materia:      Adopción

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Samuel Carrillo Vázquez
Ana I. Colón Ortiz

    Ex parte                             CC-2009-202         Certiorari

    Peticionarios

SENTENCIA

En San Juan, Puerto Rico, a 24 de mayo de 2011.

    Por estar igualmente dividido el Tribunal, se dicta Sentencia confirmatoria de la emitida por el Tribunal de Apelaciones, Región Judicial de Guayama.

    Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco emitió una Opinión de Conformidad a la cual se unieron el Juez Asociado señor Kolthoff Caraballo y el Juez Asociado señor Rivera García. El Juez Presidente señor Hernández Denton disiente con Opinión escrita a la cual se unen la Jueza Asociada señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez. El Juez Asociado señor Martínez Torres está inhibido.

                            Aida Ileana Oquendo Graulau
                        Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Samuel Carrillo Vázquez
Ana I. Colón Ortiz

    Ex Parte                                        *Certiorari*

    Peticionarios                          CC-2009-202

Opinión de conformidad emitida por la Jueza Asociada Señora Pabón Charneco a la que se le une el Juez Asociado señor Kolthoff Caraballo y el Juez Asociado señor Rivera García.

En San Juan, Puerto Rico, a 24 de mayo de 2011.

Por entender que la normativa vigente que regula el derecho de adopción en Puerto Rico no permite que un menor sea adoptado por sus abuelos cuando éste siga relacionándose con su madre biológica, a quien reconoce como tal, estoy conforme con que se confirme el dictamen del Tribunal de Apelaciones.

Los hechos de este caso son sencillos y no están en controversia. A continuación los exponemos brevemente.

**I**

El 18 de julio de 2008, los peticionarios presentaron ante el Tribunal de Primera Instancia,

Sala de Guayama, una solicitud para adoptar a su nieto S.A.C., quien en aquel momento tenía nueve (9) años de edad. Expusieron, entre otras cosas, que:

ambos son mayores de edad; que el menor se encuentra bajo la custodia de los peticionarios desde que nació; que la madre biológica, Gloria Ileana Carrillo, otorgó Declaración Jurada expresando su consentimiento a la adopción del menor, y; que el peticionario está pensionado y la fuente de ingresos de ambos proviene de beneficios de veteranos del primero. Al momento de presentarse la petición de adopción, la madre del menor tenía tres (3) hijos adicionales y se encontraba embarazada. Con excepción de S.A.C., los demás menores viven con ella. La mamá de S.A.C. vivió con éste hasta que cumplió cinco (5) años de edad, fecha en la que decidió mudarse con su entonces compañero sentimental. Para S.A.C. su madre biológica es su mamá puesto que le dice "mamí". Sin embargo le dice "papí" a su abuelo, el Sr. Samuel Carrillo Vázquez.

La Trabajadora Social del Departamento de la Familia y la Procuradora de Asuntos de Familia no se opusieron a la pretendida adopción.

Por su parte, la madre biológica no pretende desligarse del vínculo que la une a su hijo y tampoco le niega cobijo. Más bien, aseveró ante el foro de instancia que prestaba su consentimiento para la adopción porque el menor prefiere residir con los abuelos. Véase, Apéndice del *Certiorari*, pág. 30.

El Tribunal de Primera Instancia rechazó la solicitud de adopción. Señaló que "no es suficiente una determinación

de que el menor tendrá mayores garantías económicas con los adoptantes". *Íd.*, pág. 31. También expresó que las circunstancias del caso eran medulares para determinaciones de custodia que no implicaban un caso idóneo en el contexto de la normativa de adopción. *Íd.*, pág. 30. Concluyó que la petición desvirtúa los propósitos nobles de la normativa de adopción porque ésta salvaguarda el interés social de niños maltratados, desamparados, abandonados y sin hogar alguno. *Íd.*, pág. 31.

Por estar inconformes, los peticionarios presentaron una moción para solicitar determinaciones de hechos adicionales, la cual fue denegada por el Tribunal de Primera Instancia. Posteriormente, acudieron en alzada al Tribunal de Apelaciones. Este foro confirmó la decisión del Tribunal de Primera Instancia. Razonó que en este caso no se daba el rompimiento de la relación del menor con su madre biológica porque ésta pretendía seguir interactuando con el menor en una relación filial afectiva. Expuso que esta pretensión de la madre refleja su deseo de seguir siendo "mami". Al igual que el foro de instancia, el foro *a quo* señaló que la figura legal para lograr eso sin que la madre rompa sus vínculos legales con el menor y sin causarle a éste una confusión en sus relaciones afectivas, es la concesión de la custodia a los abuelos del menor. Asimismo apuntó que lo único que se conseguiría concediendo la adopción del menor a sus abuelos, es que el abuelo, quien está pensionado por veteranos, reciba un cheque adicional del Seguro Social Federal a nombre del menor. En fin, concluyó que esa relación filial entre el menor y la

madre es contraria al mandato claro de que se rompa todo vínculo legal con la familia biológica, según recogida en el Art. 137 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 538, porque el legislador contempló un rompimiento de vínculos y no una conversión de madre a hermana.

Nuevamente, por estar insatisfechos con ese dictamen, los peticionarios acuden ante nos mediante recurso de *certiorari*. En síntesis, alegan que el Tribunal de Apelaciones erró al resolver que la petición de adopción es contraria a la política pública y a la normativa que rige la materia de adopción en Puerto Rico por el hecho de que la madre biológica continúe relacionándose con su hijo.

**II**

La adopción es un acto jurídico solemne mediante el cual se sustituye totalmente el parentesco familiar biológico o natural de una persona por otro, en un procedimiento judicial rigurosamente reglamentado. *Virella v. Proc. Esp. Rel. Fam.*, 154 D.P.R. 742, 753 (2001); *Feliciano Suárez, Ex parte*, 117 D.P.R. 402, 406 (1986). Como regla general, supone la ruptura total del vínculo jurídico-familiar de una persona con su parentela biológica y la consecuente filiación de ésta con quien o quienes han expresado su voluntad de que legalmente sea su hijo o hija. *López v. E.L.A.*, 165 D.P.R. 280, 299 (2005); *Zapata et al. v. Zapata et al.*, 156 D.P.R. 278, 286 (2002). De esta manera, se extinguen totalmente los vínculos jurídicos entre el adoptado y su familia biológica y para todos los efectos el adoptado se considera como si hubiera nacido hijo del adoptante con todos los derechos, deberes y

obligaciones que le corresponden por ley. *Virella v. Proc. Esp. Rel. Fam.*, *supra*, pág. 754; *Feliciano Suárez, Ex Parte*, *supra*, pág. 406; *Rivera Coll v. Tribunal Superior*, 103 D.P.R. 325, 332 (1975).

El Art. 137 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 538, recoge en su primer párrafo los efectos de la adopción antes descritos:

> Una vez decretada la adopción, el adoptado será considerado para todos los efectos legales como hijo del adoptante con todos los derechos, deberes y obligaciones que le corresponden por ley. **La adopción por decreto final y firme extinguirá todo vínculo jurídico entre el adoptado y su familia biológica o adoptiva anterior**. (Énfasis suplido.)

De ahí que en Puerto Rico solamente existe la adopción plena, distinto a como ocurre todavía en otros países donde persiste la adopción simple o menos plena.[1] Véase, R. Serrano Geyls, *Derecho de Familia de Puerto Rico y Legislación Comparada*, 1ra ed., San Juan, Educ. Jur. Cont. Fac. Der. U. Inter., 2002, Vol. II, págs. 1086 y 1093. "E]n general, la adopción plena confiere al adoptado una filiación que sustituye a la de origen, con la única excepción de que se mantienen los impedimentos matrimoniales, mientras que la adopción simple crea un estado de hijo entre adoptante y adoptado que no se extiende a la familia del primero." *Íd.*, pág. 1093. Así, en la adopción plena prevalece el principio romano *adoptio naturam imitatur* (la adopción imita a la naturaleza) porque

---

[1] La distinción entre la adopción plena y menos plena apareció en el Derecho Justiniano. "La adopción plena se daba cuando el adoptante era ascendiente consanguíneo del adoptado. Sus efectos eran todos los inherentes a la patria potestad. En la menos plena, el adoptado se conservaba dentro de su grupo familiar biológico y adquiría prácticamente sólo el derecho a suceder abintestato al adoptante." (Nota al calce omitida.) *M.J.C.A., menor v. J.L.E.M., menor*, 124 D.P.R. 910, 916 (1989).

establece el parentesco del adoptado con el adoptante y toda su familia. *Íd.*, pág. 1086. "El adoptado se convierte para todos los efectos jurídicos en hijo matrimonial del adoptante...". *Íd.*; Véase además, J. Guitrón Fuentevilla, *Aplicación del método comparativo a las disposiciones del libro primero del Código Civil de Puerto Rico de 1930 (Personas y Familia) y a las mismas del Código Civil de México, Distrito Federal de 2000 y criterios jurisprudenciales en Derecho Familiar en ambos países*, 41 Rev. Jur. U. Inter. P.R. 317, 336 (2007). Sin embargo, la adopción menos plena no crea parentesco entre la familia biológica del adoptante y el adoptado. *Íd.*, pág. 1086.

Empero, por vía jurisprudencial, este Tribunal reconoció una excepción a la norma general de rompimiento de vínculos. En *Ex Parte J.A.A.*, 104 D.P.R. 551 (1976), la peticionaria (una mujer soltera) solicitó adoptar a la hija de su ex compañero sentimental. Allí señalamos que cuando la petición de adopción se hace individualmente, es decir, el adoptante es una sola persona y, a su vez, ésta no es el cónyuge del padre o la madre del niño, el tribunal deberá determinar si la ruptura del parentesco biológico del adoptado opera respecto de ambas líneas (paterna y materna), o respecto de una solamente. *Íd.*, pág. 558. Véase además, *Virella v. Proc. Esp. Rel. Fam.*, *supra*, págs. 754-755 esc. 27. Al fundamentar esa determinación dijimos que en casos de adopción individual el Código Civil de Puerto Rico no impide que el adoptado, al adquirir un padre adoptivo, siga vinculado en su parentesco natural con su

madre biológica y viceversa. *Ex Parte J.A.A.*, *supra*, pág. 558.

No obstante, ese no fue el único fundamento que esbozamos al establecer la excepción. También expresamos que "mediante la adopción debe crearse para el adoptado una situación que en lo posible se iguale a la condición natural del ser humano". *Íd.* Esto, sin duda, pesó en nuestra determinación al destacar el hecho de que la niña no había conocido otra madre que la peticionaria, por lo que para ella sus padres eran la peticionaria y su papa biológico (ex compañero sentimental de la peticionaria). *Íd.*, págs. 559-560. Así, resaltamos que la adopción por la peticionaria venía a consagrar ante la ley la situación de hechos que la niña había conocido durante toda su vida. *Íd.*, pág. 560. Señalamos que si se consentía la adopción por la peticionaria a base de que la niña dejara de ser hija de su padre, se desnaturalizaría el propósito legislativo. *Íd.* Por ende, concluimos que la niña podía seguir siendo hija de su padre y tener a la peticionaria como su legítima madre. *Íd.*

*A posteriori*, esta excepción fue codificada en el primer párrafo del Art. 138 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 539, mediante la Ley Núm. 8 de 19 de enero de 1995. Véase, Serrano Geyls, *op. cit.*, págs. 1196-1197. Dicho artículo dispone en lo pertinente que:

> los vínculos jurídicos del adoptado con su familia paterna o materna anterior subsistirán cuando el adoptado sea hijo del cónyuge del adoptante, aunque el padre o madre hubiere fallecido a la fecha de presentación de la petición de adopción, **o cuando el adoptado proviene de una única filiación y es adoptado por persona de distinto sexo al del padre o madre que lo ha reconocido como su hijo.** (Énfasis

suplido.) Art. 138 del Código Civil de Puerto Rico, *supra*.

El Art. 178 del Código Civil de España contenía, hasta el 2005[2], una disposición similar. Señalaba que:

1. La adopción produce la extinción de los vínculos jurídicos entre el adoptado y su familia anterior.
*2. Por excepción subsistirán los vínculos jurídicos con la familia paterna o materna, según el caso:*
*1. Cuando el adoptado sea hijo del cónyuge del adoptante, aunque el consorte hubiere fallecido.*
*2. Cuando sólo uno de los progenitores haya sido legalmente determinado y el adoptante sea persona de distinto sexo al de dicho progenitor, siempre que tal efecto hubiere sido solicitado por el adoptante, el adoptado mayor de doce años y el padre o madre cuyo vínculo haya de persistir.* Véase, A. J. Pérez Martín, *Derecho de Familia: Adopción, Acogimiento, Tutela y Otras Instituciones de Protección de Menores*, Valladolid, Ed. Lex Nova, 1995, págs. 547-548. Véase también, *Código Civil Español*, en http://civil.udg.edu/normacivil/estatal/cc/indexc c.htm

---

[2] En el 2005, el Art. 178 del Código Civil de España fue enmendado mediante la Ley 13/2005, de 1 de julio, por la que se modificó el Código Civil en materia de derecho a contraer matrimonio (BOE núm. 157, de 02-07-2005, p. 23632-23634). Actualmente dicho artículo lee:

1. La adopción produce la extinción de los vínculos jurídicos entre el adoptado y su familia anterior.

2. Por excepción subsistirán los vínculos jurídicos con la familia del progenitor que, según el caso, corresponda:

  1. Cuando el adoptado sea hijo del cónyuge del adoptante, aunque el consorte hubiere fallecido.

  2. Cuando sólo uno de los progenitores haya sido legalmente determinado, siempre que tal efecto hubiere sido solicitado por el adoptante, el adoptado mayor de doce años y el progenitor cuyo vínculo haya de persistir.

3. Lo establecido en los apartados anteriores se entiende sin perjuicio de lo dispuesto sobre impedimentos matrimoniales. Véase, *Código Civil Español*, en http://civil.udg.edu/normacivil/estatal/cc/indexcc.htm

Bajo la segunda excepción, que es la misma que reconoció este Foro en *Ex Parte J.A.A.*, *supra*, para que no se extinguieran los vínculos jurídicos después de la adopción, respecto del padre o la madre, era necesario que, *inter alia*, solamente una persona fuera la que adoptara porque, de ser dos, obligatoriamente serían de distinto sexo. Pérez Martín, *op. cit.*, pág. 548. Lógicamente, la excepción excluía la adopción en pareja porque solamente se permitía adoptar conjuntamente a un hombre y a una mujer. Por consiguiente, al requerir que la pareja adoptante fuera de distinto sexo, forzosamente, uno de los adoptantes sería del mismo sexo del progenitor y no se cumpliría la excepción. Ese requisito es totalmente aplicable en nuestra jurisdicción porque aquí solamente pueden adoptar parejas casadas entre sí que sean de sexos opuestos. Véanse: Arts. 68 y 133 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 221 y 534; *Virella v. Proc. Esp. Rel. Fam.*, *supra.*

Como puede apreciarse, según lo señalamos en *Ex Parte J.A.A.*, *supra*, pág. 558, el propósito subyacente bajo esta excepción es permitirle al adoptado estar en una situación que en lo posible se iguale a la condición natural del ser humano. Es decir, que el adoptado pueda relacionarse con una figura paterna y materna. Ello se logra permitiendo que, por excepción, luego de la adopción subsista el vínculo biológico

entre el adoptado y el progenitor que lo reconoció, si éste tiene el sexo opuesto del adoptante.

Por otro lado, la institución de la adopción tiene varios fines. Hemos expresado que ésta busca brindarles a los niños y niñas sin padres la oportunidad de que se puedan criar y educar en el seno de un hogar adecuado. *Zapata et al. v. Zapata et al.*, *supra*, pág. 286. "Ello, en atención a la problemática social que aqueja a nuestra sociedad de niños abandonados o maltratados dentro de un hogar en el cual se supone que reciban amor, protección y cuidado". *López v. E.L.A.*, *supra*, pág. 300; *Zapata et al. v. Zapata et al.*, *supra*, pág. 287. A su vez, la adopción les facilita a los padres sin hijos la oportunidad de tenerlos y asegurar la continuidad de su familia. *Virella v. Proc. Esp. Rel. Fam.*, *supra*, pág. 754; *M.J.C.A., menor v. J.L.E.M., menor*, 124 D.P.R. 910, 916 y 922 (1989). Pero sobre todo, la institución de la adopción busca salvaguardar el interés del adoptado. *Ex Parte Warren*, 92 D.P.R. 299, 302 (1965). Por eso, hemos afirmado que el interés principal de la adopción es el bienestar del menor. *López v. E.L.A.*, *supra*, pág. 300; *Virella v. Proc. Esp. Rel. Fam.*, *supra*, pág. 754.

En 1995 se aprobó legislación para enmendar la figura de la adopción en Puerto Rico, tanto en su dimensión procesal como sustantiva. En su vertiente procesal, la Ley Núm. 9 de 19 de enero de 1995, 32 L.P.R.A. sec. 2699 *et seq.*, enmendó la Ley de Procedimientos Legales Especiales. En su Exposición de Motivos esta ley declara que el Estado tiene un interés apremiante en cuidar y promover la

conservación de la unidad familiar y en prevenir la desintegración de la familia, por lo que es un derecho inalienable de los niños el poder vivir y crecer dentro del seno de un hogar feliz y al calor de sus padres. Sin embargo, también expone que el Estado tiene el deber social de tomar todas las medidas a su alcance para proteger el bienestar de los menores de edad de los abusos y abandonos. En ese sentido, el estatuto señala que busca proteger particularmente a los menores maltratados, abandonados y desamparados, para que mediante la adopción estos puedan formar parte de hogares estables.

Mediante esta ley, la Asamblea Legislativa pretendió ampliar y facilitar el uso del mecanismo de la adopción para que pudiera ser utilizado de forma más amplia y rápida por personas que desean acoger como padres en el seno de su hogar a menores e incapacitados en estado de desamparo y abandono. *López v. E.L.A.*, *supra*, pág. 300. En esencia, esta Ley se aprobó para superar los serios escollos y dilaciones innecesarias que caracterizaban el procedimiento de adopción anterior. *Íd.* En ese contexto, **"favorece la ruptura expedita de los lazos biológicos para crear una nueva y mejor relación paterno filial no determinada por la consanguinidad"**. (Énfasis suplido.) *Estrella, Monge v. Figueroa Guerra*, 170 D.P.R. 644, 659 (2007).

Por su parte, la Ley Núm. 8 de 19 de enero de 1995, 31 L.P.R.A. sec. 531 *et seq.*, reguló la adopción en su vertiente sustantiva. Por medio de esta ley se enmendó el articulado sobre adopción en el Código Civil de Puerto Rico. Véase, *Virella v. Proc. Esp. Rel. Fam.*, *supra*, pág.

754. Este estatuto tuvo el propósito de flexibilizar la institución de adopción. *Íd.*, pág. 755. Asimismo, en su Exposición de Motivos esta Ley establece que los niños tienen como derecho inalienable vivir y crecer dentro del seno de un hogar feliz y al calor de sus padres progenitores y que es deber del Estado tomar las medidas necesarias para la protección y el bienestar de la niñez y de la juventud.

Como puede apreciarse, "[a]mbas legislaciones tuvieron idéntico propósito: *utilizar el mecanismo de adopción para brindarles hogares a menores que así lo necesitaran".* (Énfasis en el original.) *López v. E.L.A., supra*, pág. 301. Además, ambas leyes "se mueven entre dos polos: el derecho de los niños a vivir con sus progenitores y el deber del Estado de proteger a esos niños en casos de abandono o maltrato". Serrano Geyls, *op. cit.*, pág. 1100.

En cuanto a la interpretación de estos estatutos, hemos señalado que deben interpretarse de forma liberal, a favor del adoptado. *Íd.*, pág. 303; *Virella v. Proc. Esp. Rel. Fam., supra*, pág. 756. No obstante, también hemos sido enfáticos al advertir que la liberalidad en la interpretación no puede llevarnos a violentar la intención legislativa y, tampoco, a consagrar absurdos. *Íd.*

Ciertamente, en nuestro ordenamiento no existe ningún impedimento para que un ascendiente adopte a un descendiente. *M.J.C.A., menor v. J.L.E.M., menor, supra*, pág. 931. Sin embargo, esto no significa que un ascendiente pueda adoptar a un descendiente al margen de la regla general de que la adopción desarraiga al adoptado de todo

vínculo de parentesco y de todo derecho respecto a su familia biológica. Véase, *Íd.*, pág. 933.

Precisamente, en *M.J.C.A., menor v. J.L.E.M., menor, supra*, este Foro atendió una petición de adopción presentada por los abuelos paternos de un huérfano de padre y madre. En ese caso la controversia giraba en torno a si los abuelos paternos podían adoptar a su nieto, aun cuando fueron nombrados tutores testamentarios, no rindieron las cuentas de la tutela y la abuela materna no fue oída en el procedimiento donde tanto ella como el hermano materno del menor se oponían a la adopción. *Íd.*, págs. 914-915. El Tribunal resolvió que los abuelos paternos tenían que rendir las cuentas de la tutela para ser adoptantes, por lo que el Tribunal de Primera Instancia no tenía jurisdicción hasta que no se verificasen las correspondientes operaciones sobre la tutela. *Íd.*, págs. 931. Además, resolvió que la abuela materna tenía derecho a ser oída en el proceso de adopción. *Íd.*, pág. 932. Por ende, se decretó la nulidad de la adopción y se devolvió el caso al foro de instancia para que celebrara una vista en su fondo con intervención de la abuela materna y se les diera la oportunidad a los abuelos paternos de rendir las cuentas de la tutela. *Íd.*, págs. 934-935.

Sin embargo, en un *dictum*, el Tribunal acotó que, aunque como regla general la adopción rompe el vínculo biológico del adoptado, la adopción por los abuelos paternos no necesariamente tenía que desvincular al menor de su familia biológica por la línea materna. *Íd.*, págs. 933-934. Señaló que el fundamento que se esbozó en el caso

de *Ex parte J.A.A.*, *supra*, era igualmente válido a ese escenario porque se trataba de un menor huérfano de padre y de madre, con un hermano biológico por la línea materna y donde los ascendientes de primer grado por ambas líneas habían demostrado un gran interés en el bienestar del menor. *Íd.*, pág. 934.

Con independencia de que tales pronunciamientos se hicieran por medio de un *dictum*, en general la extrapolación que hizo el Tribunal en *M.J.C.A., menor v. J.L.E.M., menor*, *supra*, de la excepción reconocida en *Ex parte J.A.A.*, *supra*, tenía unas bases análogas. De ser adoptado por sus abuelos paternos y mantenerse su relación con su abuela y hermano por la línea materna, se hubiera creado para él una situación similar a la condición natural del ser humano pues podría estar vinculado a una figura paterna (abuelo paterno), materna (abuela paterna), a un hermano y a su abuela materna. Además, al ser huérfano no existía el problema de que mantuviera el vínculo biológico del menor por la línea materna porque éste no iba a tener más de una mamá.

Posteriormente, en *Virella v. Proc. Esp. Rel. Fam.*, *supra*, este Tribunal, tomo como base los pronunciamientos que hizo en *M.J.C.A., menor v. J.L.E.M., menor*, *supra*, para emitir otro *dictum* de esa índole. Allí, los abuelos paternos, presentaron una petición conjunta para adoptar a su nieta, que luego enmendaron para que el abuelo paterno apareciera como adoptante único. La enmienda se debió a que la madre biológica de la menor quería retener la patria potestad y la custodia legal sobre su hija, y deseaba que

ésta conservara su segundo apellido. Así, la controversia que tuvo el Tribunal ante sí era si las excepciones a la norma de adopción conjunta para los cónyuges establecidas en el Art. 133 del Código Civil, *supra*, constituían una enumeración taxativa o meramente ilustrativa. *Virella v. Proc. Esp. Rel. Fam.*, *supra*, pág. 752. El Tribunal resolvió que las excepciones a la norma de adopción conjunta eran una enumeración taxativa. *Íd.*, pág. 758. Por lo tanto determinó que el abuelo no podía adoptar individualmente porque estaba casado. *Íd.*, pág. 760.

No obstante, el Tribunal no se conformó con resolver la controversia que tenía ante su consideración. Nuevamente emitió un *dictum* en el que señaló, citando a *M.J.C.A., menor v. J.L.E.M., menor*, *supra*, que "nada impide que los tribunales, en casos particulares, concedan la adopción y opten por conceder la patria potestad a los abuelos paternos con la custodia compartida entre estos y la madre biológica del menor". (Citas omitida.) *Íd.* Es decir, el Tribunal fue más lejos porque intimó que la adopción no tiene que necesariamente desvincular a un menor de su madre cuando éste es adoptado por sus abuelos. Este Foro ignoró que en *M.J.C.A., menor v. J.L.E.M., menor*, *supra*, no había de por medio una madre biológica.

Por eso, a mi juicio, esas expresiones se abstrajeron de los fundamentos que se esgrimieron cuando se reconoció la excepción de *Ex parte J.A.A.*, *supra*. En el supuesto de que se permitiera la adopción conjunta de los abuelos y, a su vez, que no se rompiera el vínculo biológico entre la madre y el adoptado, éste hubiera tenido un padre y dos

madres, siendo su progenitora además, su hermana legal. A nuestro juicio, eso no crearía para el adoptado una situación similar a la condición natural del ser humano.

Con este marco teórico en mente, procedemos a analizar los hechos del presente caso.

### III

Aquí no estamos ante un menor abandonado, maltratado, desamparado o necesitado de un hogar. Aunque reconocemos que la adopción puede ser asequible a otras instancias en las cuales no medien estrictamente esas condiciones, lo cierto es que la política pública acuciante proyectada en las Leyes Núm. 8 y Núm. 9, *supra*, es proteger a menores enmarcados en ese perfil. Tampoco estamos ante una petición de adopción de vínculo sencillo en la que se busca darle un padre al menor S.A.C. Aquí la solicitud de adopción es de doble vínculo (abuelo y abuela), por lo que no es de aplicación la excepción reconocida en *Ex Parte J.A.A.*, *supra*, estatuida en el Art. 138 del Código Civil, *supra*. Asimismo, me parece que los fundamentos que movieron al Tribunal a establecer esa excepción no están presentes en el caso de autos.

Si permitimos que los peticionarios adopten al menor y que, por excepción, la madre biológica siga relacionándose con éste en calidad de mamá, subsistiría una relación filial afectiva idéntica a la del parentesco biológico pero con una anomalía palpable: los peticionarios se convertirán *de jure* en los padres del menor y su madre, a quién éste considera su mamá, en su hermana legal. Soy del parecer que ello no crearía para el adoptado una

situación que en lo posible se iguale a la condición natural del ser humano. Si se concede la adopción, la ley formalizaría una realidad distinta a la experimentada por S.A.C. porque convertiría a su abuela en su madre legal cuando éste a quien reconoce como "mamí" es a su madre biológica. En este caso, su madre se convertirá en su hermana legal y sus hermanos en sus sobrinos legales. Por eso, creo que la concesión de la adopción bajo esos términos no es afín a la intención legislativa, según expuesta en las Leyes Núm. 8 y 9, *supra*, que favorece la ruptura expedita de los lazos biológicos para crear una nueva y mejor relación paterno filial no determinada por la consanguinidad. *López v. E.L.A.*, *supra*, pág. 300.

Aquí, distinto a lo ocurrido en *Ex Parte J.A.A.*, *supra*, la adopción no viene a consagrar ante la ley la situación que S.A.C. ha conocido durante toda su vida. Si bien el menor reconoce a su abuelo como su papá, no es menos cierto que para él su mamá es su progenitora. De hecho, ésta no le niega cobijo a S.A.C. Lo que señala es que S.A.C. prefiere residir con los abuelos. Tales expresiones demuestran que la progenitora está dispuesta a hacerse responsable de S.A.C. y a seguir fungiendo su rol de madre.

Por otro lado, como indicaron tanto el Tribunal de Primera Instancia como el Tribunal de Apelaciones, nada impide que los peticionarios soliciten la custodia de S.A.C. En primer lugar, las determinaciones sobre custodia en nuestra jurisdicción deben hacerse a base del bienestar y los mejores intereses del menor. *Rivera v. Morales*, 167

D.P.R. 280, 293 (2006); *Nudelman v. Ferrer Bolivar*, 107 D.P.R. 495, 509 (1978); *Marrero Reyes v. García Ramírez*, 105 D.P.R. 90, 104 (1976). No existe una regla mecánica de que los padres biológicos deben prevalecer siempre en los reclamos de custodia. *Marrero Reyes v. García Ramírez*, *supra*, pág. 105. Por ello, es necesario que los tribunales consideren distintos factores al momento de determinar el bienestar del menor al adjudicar casos de custodia. Estos son: la preferencia del menor, su sexo, edad, salud mental y física; el cariño que pueden brindarle las partes en controversia; la habilidad de las partes para satisfacer las necesidades afectivas y morales del menor; la interrelación del menor con las partes y con otros miembros de la familia; el grado de ajuste del menor al hogar, la escuela y la comunidad en que vive; y la salud psíquica de las partes. *Rexach v. Ramírez*, 162 D.P.R. 130, 160-161 (2004); *Marrero Reyes v. García Ramírez*, *supra*, pág. 105. Por lo tanto, si realmente el mejor bienestar de S.A.C. está con sus abuelos, aunque los padres biológicos soliciten la custodia no se les concederá. Así lo provee nuestro ordenamiento.

En segundo lugar, la madre de S.A.C. no le ha negado cobijo. Además, no surge de los autos que ésta se haya despreocupado por el menor o que lo haya maltratado, abandonado o despreciado. Al contrario, ella lo que dice es que consiente la adopción porque eso es lo que quiere S.A.C. A nuestro juicio, ello revela que la madre sí se preocupa por el menor y quiere lo mejor para él. Por eso, no podemos colegir categóricamente que si la madre tuviera

la custodia del menor se trastocaría la seguridad y estabilidad de éste.

Ahora bien, distinto a la custodia, si se le concede la adopción a los peticionarios, el abuelo del menor, el señor Carrillo Vázquez, podrá solicitar un beneficio económico adicional al que actualmente recibe por parte del Gobierno Federal por tener un dictamen de incapacidad. Si adopta a S.A.C. podría recibir un cheque adicional por concepto de seguro social a nombre del menor. Véase, Sec. 202 (d)(1) del Social Security Act,[3] 42 U.S.C. sec. 402 (establece que los hijos menores dependientes de las personas incapacitadas bajo dicho estatuto, tienen derecho a recibir un beneficio económico). Véase además, *Torres Rodríguez v. Carrasquillo Nieves*, res. 29 de diciembre de 2009, 177 D.P.R. ___ (2009), 2009 T.S.P.R. 187.

No cabe duda que uno de los fines de la adopción es que al adoptado se le provea seguridad económica. Ese fin en sí mismo es loable. Sin embargo éste no puede justificar toda forma en que se pretenda satisfacer: "el fin no siempre justifica los medios".

En primer lugar, creo que la petición de adopción no puede fundamentarse en la obtención de un beneficio económico de esta naturaleza porque existe el riesgo de que futuros adoptantes hagan peticiones de adopción con el propósito de recibir la ayuda económica que proporcionan distintas entidades del Gobierno, como lo es el seguro social, para beneficiarse a sí mismos y no al adoptado. No

---

[3] Ley Púb. Núm. 92-603 del 14 de agosto de 1935 conocida como "Social Security Act", Títulos IV-A y XVI, según enmendada.

debemos olvidar que en estos casos, por ser el adoptado menor de edad, será el adoptante quien, como norma general, termine administrando el dinero que reciba el primero. Además, es muy difícil determinar si el adoptante quiere adoptar para ayudar al menor o para ayudarse a sí. Por eso, el mero hecho de que la concesión de la adopción esté relacionada con este tipo de beneficio, plantea la posibilidad de que se pueda defraudar al Gobierno.

En segundo lugar, considero que la seguridad económica de un menor no puede estar supeditada a la posibilidad de que con la adopción se pueda recibir un beneficio económico por parte del Gobierno. Ello porque la obtención de tal beneficio no está garantizada y la adopción no debe evaluarse a base de meras posibilidades. Tiene que haber la mayor certeza posible de que el menor tendrá seguridad económica. Después de todo, el decreto de adopción tiene que basarse en el mejor interés y bienestar del menor. Por eso, entiendo que la finalidad de la seguridad económica se tiene que analizar al momento de la petición de la adopción y no a base de una posibilidad futura. Es decir, si el adoptante puede brindarle seguridad económica al adoptado al momento en que hace la petición de adopción.

En consecuencia, no creo que sea cónsono con los mejores intereses de un menor que es candidato a ser adoptado, el que los tribunales consideren como uno de los criterios para conceder la adopción, que el Gobierno le pueda proporcionar un beneficio económico. Por un lado, ello propicia que personas inescrupulosas quieran adoptar

para beneficiarse de esa ayuda económica y, por otro lado, sujeta o condiciona la seguridad económica del menor a la posibilidad de que el Gobierno conceda ese beneficio. Esto no le hace justicia a ningún menor que pueda ser adoptado.

## IV

Por los fundamentos expuestos, procede que se confirme el dictamen del Tribunal de Apelaciones por entender que no procede la adopción del menor bajo las circunstancias del presente caso por ser contraria a la normativa vigente que regula el derecho de adopción en nuestra jurisdicción.


                                    Mildred G. Pabón Charneco
                                       Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Samuel Carrillo Vázquez
Ana I. Colón Ortiz

    Ex parte                   CC-2009-202
    Certiorari

    Peticionarios


Opinión Disidente emitida por el Juez Presidente SEÑOR HERNÁNDEZ DENTON a la cual se unen la Jueza Asociada SEÑORA FIOL MATTA y la Juez Asociada SEÑORA RODRÍGUEZ RODRÍGUEZ.


San Juan, Puerto Rico, a 24 de mayo de 2011.

El día de hoy, unos abuelos se ven imposibilitados de adoptar al nieto que han criado como si fuese un hijo por el mero hecho de que la madre del menor se relaciona con éste. Por estar este Tribunal igualmente dividido, se confirma una sentencia del Tribunal de Apelaciones que denegó la adopción bajo el fundamento principal de que lo que estos abuelos pretenden contravendría la política pública y la normativa sobre la adopción. No estamos de acuerdo con una interpretación tan restrictiva de la ley, sobre todo cuando, como sucede en este caso, su aplicación lleva a un resultado contrario a los mejores intereses del menor. El bienestar del menor

es, precisamente, el bien jurídico que por ley venimos llamados a proteger. Por estas razones, las cuales se detallan a continuación, hubiésemos revocado la sentencia del Tribunal de Apelaciones y permitido la adopción del menor por sus abuelos, los peticionarios.

I.

La Sra. Gloria Ileana Carrillo Colón tenía 14 años cuando dio a luz al menor S.A.C. en 1999. Desde que nació, el menor ha vivido en casa de sus abuelos maternos, el Sr. Samuel Carrillo Vázquez y la Sra. Ana I. Colón Ortiz. Inicialmente, el menor vivió allí junto a su madre biológica. Posteriormente, cuando el niño tenía cinco años, su madre se fue a vivir con su entonces compañero sentimental, quedándose su hijo bajo la guarda de sus abuelos maternos, con quienes vive hasta el día de hoy. El menor reconoce que la señora Carrillo Colón es su madre biológica, refiriéndose a ella como "mami". Sin embargo, le dice "papi" a su abuelo, aun cuando conoce a su presunto padre biológico, quien no lo ha reconocido como su hijo.[4]

Así las cosas, el 18 de julio de 2008, el señor Carrillo Vázquez y la señora Colón Ortiz presentaron ante el Tribunal de Primera Instancia, Sala de Guayama, una petición para adoptar a su nieto S.A.C., quien para esa fecha tenía

---

[4]Al momento de presentarse esta petición de adopción, la señora Carrillo Colón, madre biológica del menor, tenía tres hijos adicionales y se encontraba a la espera de un quinto hijo. Excepto por el menor S.A.C., todos los otros hijos de la señora Carrillo Colón viven con ella y su compañero sentimental. Para esa misma fecha, el presunto padre biológico del menor se hallaba confinado.

nueve años.[5] A tales efectos, expusieron que gozan de buena reputación en la comunidad y que están en condición de continuar proveyéndole al menor un hogar estable, sano y moral, y de atender sus necesidades emocionales, materiales y económicas. Además, revelaron que su fuente de ingresos consiste de los beneficios que el señor Carrillo Vázquez recibe en calidad de veterano.

La solicitud de adopción vino acompañada de una declaración jurada otorgada por la señora Carrillo Colón, madre biológica del menor e hija de los peticionarios, en la que ésta consiente a que sus padres —los abuelos de S.A.C.— adopten a su hijo.[6] Asimismo, la trabajadora social del Departamento de la Familia y la Procuradora de Asuntos de Familia no se opusieron a la solicitud de adopción, pues coincidieron en que los peticionarios tienen la capacidad para garantizar el bienestar del menor. Así lo manifestaron en una vista celebrada el 20 de octubre de 2008 por el Tribunal de Primera Instancia.

No obstante, el foro primario denegó la petición por entender que ésta desvirtúa el enfoque de nuestra normativa sobre adopción. Razonó que dicha normativa salvaguarda el interés social de niños maltratados, desamparados,

---

[5]Como cuestión de hecho, a la fecha de presentación de la petición, los peticionarios, el Sr. Samuel Carrillo Vázquez y la Sra. Ana I. Colón Ortiz, tenían 56 y 44 años, respectivamente.

[6]Allí, la Sra. Gloria Ileana Carrillo Colón declaró: "Que por la presente libre y voluntariamente AUTORIZO Y NO TENGO OBJECIÓN a que mi hijo se[a] ADOPTADO LEGALMENTE POR SUS ABUELOS SAMUEL CARRILLO VÁZQUEZ Y ANA LILIAM COLÓN ORTIZ para todos los efectos legales".

abandonados y sin hogar alguno, consideraciones que, según dicho foro, están ausentes en este caso. De igual forma, concluyó que la presente petición está motivada por el deseo de que el menor cuente con mayor protección económica. Sobre este particular, sostuvo que una adopción no puede basarse meramente en la determinación de que, económicamente, el menor estará mejor con los adoptantes.

Inconformes, los peticionarios presentaron una moción para solicitar determinaciones de hechos adicionales. Dicha moción fue denegada por el Tribunal de Primera Instancia.[7]

Así las cosas, los peticionarios acudieron ante el Tribunal de Apelaciones. La Procuradora General compareció y se expresó a favor de la adopción solicitada. No obstante, el foro apelativo intermedio confirmó la decisión del tribunal de instancia de denegar la adopción. Dicho foro entendió que la relación que la madre biológica pretende seguir teniendo con su hijo es contraria al mandato de que, mediante la adopción, se rompa todo vínculo legal con la familia biológica. Razonó que el legislador contempló un rompimiento de vínculos, no una conversión de madre a hermana. Según el Tribunal de Apelaciones, tal situación

---

[7]De la resolución emitida a tales efectos por el foro de instancia, resultan relevantes las siguiente expresiones:

> Tomamos excepción de las expresiones de la parte peticionaria al inferir una veda particular a las peticiones de adopción promovidas por abuelos. Ciertamente esa no es la postura de este Tribunal, según evidencia nuestro récord judicial en atención de solicitudes instadas por abuelos y familiares, en circunstancias que se enmarcan dentro del fin perseguido por la normativa de adopción.

crearía una confusión en la psiquis del niño, la cual hace que la adopción no propenda al mejor interés y bienestar del menor. Este elemento, entendió el juzgador apelativo, no fue considerado por la trabajadora social. Dicho foro concluyó además que la madre biológica del menor no quería o comprendía las consecuencias de la adopción, razón por la cual su consentimiento estuvo viciado y procedía desestimar la acción. Por último, el foro apelativo intermedio concluyó que lo único que se lograba con la presente adopción era que el menor se beneficiara de la compensación por incapacidad que su abuelo, el señor Carrillo Vázquez, recibía en calidad de veterano. Tal beneficio económico, concluyó, no podía ser el fundamento para cambiar la filiación de un menor. Según el Tribunal de Apelaciones, la custodia es la figura legal que permitiría formalizar la responsabilidad que los abuelos asumieron con el menor, sin que la madre biológica rompa sus vínculos legales con él y sin causarle una confusión en sus relaciones afectivas.

Insatisfechos con este dictamen, los peticionarios acudieron ante nos mediante recurso de *certiorari*. En esencia, alegan que el Tribunal de Apelaciones erró al resolver que la presente petición de adopción es contraria a la política pública y la normativa en materia de adopción por el mero hecho de que la madre biológica continuaría relacionándose con su hijo. El 8 de octubre de 2009, expedimos el recurso solicitado. Oportunamente, los peticionarios presentaron su alegato. Por su parte, la Procuradora General compareció y, una vez más, se expresó a

favor de la adopción solicitada. Establecidos los hechos pertinentes y el tracto procesal del caso, repasemos el derecho aplicable a la controversia.

II.

A.

Los abuelos desempeñan un papel fundamental en nuestra sociedad, interviniendo activamente en las vidas de sus nietos cada vez con mayor frecuencia. Rexach v. Ramírez, 162 D.P.R. 130, 156 y 136 (2004). A tales efectos, en Alonso García v. S.L.G., 155 D.P.R. 91, 100-101 (2001), expresamos:

> La sociedad puertorriqueña ha reconocido tradicionalmente que los abuelos son una figura esencial en la formación y desarrollo de los nietos. Hoy, son muchos los abuelos que atienden y cuidan a sus nietos mientras ambos padres trabajan en busca de unos ingresos proporcionados al costo de vida. Comúnmente, los abuelos se preocupan por la salud, la alimentación, el bienestar y la seguridad de sus nietos. Además, se esmeran en brindarles cariño, atención y orientación. (Citas omitidas).

Así como hay abuelos cuyo rol es el de atender y cuidar a sus nietos mientras los padres trabajan, existen abuelos que tienen la responsabilidad de criar a sus nietos. Según estadísticas del Negociado del Censo de Estados Unidos (U.S. Census Bureau), en Puerto Rico, 59,815 abuelos son responsables por sus nietos menores de 18 años; de ese número, 40,187 son casados (67.2%) y 37,860 son mujeres (63.3%).[8] Por otro lado, las adopciones de nietos

---

[8] U.S. Census Bureau, Datos de la Encuesta sobre la Comunidad de Puerto Rico del 2005-2009 (Características Generales: Población y Vivienda), disponible a través de http://factfinder.census.gov/servlet/BasicFactsServlet? lan g=es& ts=.

por sus abuelos son comunes en Puerto Rico. De acuerdo con estadísticas de la Administración de Familias y Niños (ADFAN), durante los últimos cinco años, entre el 16% y el 24% de los menores adoptados en Puerto Rico han sido adoptados por sus abuelos. Así, por ejemplo, durante los primeros siete meses del año fiscal 2009-2010, 38 de los 240 menores adoptados en el País (15.8%) fueron adoptados por sus abuelos.[9]

B.

Por otro lado, hemos definido la adopción como un acto jurídico solemne que supone la ruptura total del vínculo jurídico-familiar de una persona con su parentela biológica y la consecuente filiación de ésta con quienes han expresado la voluntad de que legalmente sea su hijo. López v. E.L.A., 165 D.P.R. 280, 299 (2005); Virella v. Proc. Esp. Rel. Fam., 154 D.P.R. 742 (2001); Feliciano Suárez, Ex parte, 117 D.P.R. 402 (1986). Bajo dicha institución, la relación filiatoria adoptiva se equipara con aquella que se produce naturalmente, con iguales deberes y obligaciones jurídicas y sociales. López v. E.L.A., supra; Zapata et al. v. Zapata et al., 156 D.P.R. 278 (2002).

Mediante la adopción se busca atender el problema social de niños abandonados y maltratados. Sobre la función social de dicha institución jurídica, hemos indicado que

---

[9] Oficina de Planificación de ADFAN, Informe Estadístico SP 412 (Informe de Adopción). En el año fiscal 2008-2009, 16.9% de los menores adoptados en el País (52 de 307) fueron adoptados por sus abuelos; en el 2007-2008, 24.3% (69 de 292); en el 2006-2007, 18.8% (61 de 325); en el 2005-2006, 17.8% (62 de 349). Íd.

ésta cumple varios fines, siendo principal entre ellos el de darles a los niños sin padres la oportunidad de criarse en un hogar donde puedan ser atendidos debidamente y facilitar a los padres sin hijos la oportunidad de tenerlos y asegurar así la continuidad de su familia. López v. E.L.A., *supra*, pág. 300; M.J.C.A., menor v. J.L.E.M., menor, *supra*; Feliciano Suárez, Ex parte, *supra*.

En nuestra jurisdicción, el acto jurídico de la adopción está rigurosamente reglamentado por el Código Civil, 31 L.P.R.A. sec. 531-539, en su dimensión sustantiva, y por la Ley de Procedimientos Legales Especiales, antes Código de Enjuiciamiento Civil, 32 L.P.R.A. secs. 2699-2699s, en su dimensión procesal. López v. E.L.A., *supra*; Virella v. Proc. Esp. Rel. Fam., *supra*; Feliciano Suárez, Ex parte, *supra*.

Respecto a su vertiente procesal, la Ley Núm. 9 de 19 de enero de 1995, 32 L.P.R.A. sec. 2699 et seq., enmendó la Ley de Procedimientos Legales Especiales con el fin de superar los serios escollos y dilaciones innecesarias que caracterizaban el procedimiento de adopción hasta ese momento. López v. E.L.A., *supra*, págs. 299-300. Hemos afirmado que la intención legislativa de dicha ley "va dirigida a prestar particular atención a los menores maltratados, abandonados y desamparados, para que mediante los mecanismos de adopción, éstos puedan formar parte de hogares estables, donde a su vez encuentren la felicidad, el amor, la protección y el desarrollo físico, psicológico, mental y moral". *Íd.*, pág. 300.

Por otro lado, la Ley Núm. 8 de 19 de enero de 1995, 31 L.P.R.A. sec. 531 et sec., enmendó el capítulo del Código Civil que regula los aspectos sustantivos de la adopción. Sobre dicho estatuto, hemos dicho que la intención del legislador fue "flexibilizar la institución de la adopción para que *pueda ser ampliamente utilizada por personas que desean adoptar menores de edad*". *Íd.*, pág. 301 (Énfasis en el original).

Mediante las referidas Leyes Núms. 8 y 9 de 1995, *supra*, se adoptó en Puerto Rico lo que el legislador describió como "una de las legislaciones más avanzadas y liberales de todos los países occidentales en materia de adopción[,] siendo su espíritu claramente autóctono, ajustado a la realidad de la vida actual de la sociedad puertorriqueña, y protector de[l] bienestar y [la] conveniencia del adoptando". *Íd.*

Ahora bien, conviene recordar que, previo a la aprobación de las Leyes Núms. 8 y 9 de 1995, la institución de la adopción "fue considerada como una de carácter esencialmente social dirigida primordialmente a dar padres a niños que nos los tuvieran, o cuyos padres **no los quisieran** o **no los pudieran atender debidamente**". *Íd.*, pág. 302, citando a <u>Ex parte J.A.A.</u>, 104 D.P.R. 551, 556 (1976) (Énfasis nuestro).

Reiteradamente, hemos indicado que el propósito primordial de la adopción es el bienestar del menor. <u>López v. E.L.A.</u>, supra; <u>Zapata et al. v. Zapata et al.</u>, *supra*. El Art. 2 de la Ley para el Bienestar y la Protección Integral

de la Niñez, Ley Núm. 177 de 1 de agosto de 2003, 8 L.P.R.A. sec. 444 et seq., define el mejor interés del menor como "el balance entre los diferentes factores que pueden afectar la seguridad, salud, bienestar físico, mental, emocional, educativo, social y [cualquier] otro dirigido a alcanzar el desarrollo óptimo del/a menor". 8 L.P.R.A. sec. 444(u) (Corchetes en el original).

Respecto a la interpretación del conjunto de normas sustantivas y procesales de la adopción, hemos expresado que éstas deben ser interpretadas liberalmente a favor del adoptado. Sin embargo, dicha liberalidad no puede llevar a que se violente la intención legislativa, ni consagrar absurdos. *Íd.*, pág. 303; <u>Virella v. Proc. Esp. Rel. Fam.</u>, *supra*.

Debe añadirse que, recientemente, la Asamblea Legislativa aprobó la Ley de Reforma Integral de Procedimientos de Adopción de 2009, Ley Núm. 186 de 18 de diciembre de 2009, 8 L.P.R.A. sec. 1051 *et seq*. Dicho estatuto incorporó la opción de "madres donantes voluntarias" a nuestro ordenamiento sobre adopción, dispuso para la creación de un registro de personas interesadas en adoptar y estableció un proceso de convalidación de las adopciones llevadas a cabo fuera de Puerto Rico. En la Exposición de Motivos, el legislador describe la adopción como "una alternativa real y una opción de amor en beneficio de todos, **cuando por diversas circunstancias nuestros niños no encuentran en sus padres biológicos el amor y afecto que por derecho natural deben recibir"**.

Exposición de Motivos, *Íd.* (Énfasis nuestro). Su objetivo es "velar por el mejor interés del adoptado y amparar su derecho a desarrollarse en el seno de una familia que le brinde el afecto y le procure los cuidados que satisfagan sus necesidades espirituales y materiales, **cuando ello no le pueda ser proporcionado por sus padres biológicos**". *Íd.* (Énfasis nuestro). Así, pues, el bienestar del menor es el criterio rector, aun cuando este fundamento esté reñido con la unidad familiar. Sobre este particular, el legislador expresa:

> Se ha constatado que el bienestar y la seguridad de los menores, en muchos casos, se han visto comprometidos por la obcecada intención de lograr la unidad familiar, aun en casos donde las circunstancias de dicho seno familiar van en detrimento del bienestar de los menores. Aun cuando el principio de unidad familiar es esencial, […] el fundamento **principal** siempre debe ser el bienestar y la seguridad del menor, brindarle un ambiente adecuado en el hogar, de modo que se sienta amado y que se pueda desarrollar física, mental, social y moralmente, además de proveerle una convivencia sana, llena de orden, paz y tranquilidad. *Íd.* (Énfasis nuestro).

Como mencionáramos, este estatuto estableció un sistema de "madres donantes voluntarias". Bajo esta alternativa, "la mujer embarazada acuerda con unos prospectivos padres adoptivos, la entrega de su recién nacido, a partir de su nacimiento". *Íd.* Mediante la institución de este sistema, el legislador quiso viabilizar un proceso expedito de adopción que sirviera para "velar por el mejor interés del adoptado y amparar su derecho a desarrollarse en el seno de una familia que le brinde el afecto y le procure los cuidados que satisfagan sus

necesidades espirituales y materiales, **cuando ello no le pueda ser proporcionado por sus padres biológicos**". *Íd.* (Énfasis nuestro).

Por otro lado, hemos resuelto que ninguno de los requisitos o de las prohibiciones sustantivas de nuestro ordenamiento sobre adopción impide que un ascendiente adopte a un descendiente.[10] <u>M.J.C.A., menor v. J.L.E.M.,</u>

---

[10]El Art. 130 del Código Civil, 31 L.P.R.A. sec. 531, dispone:

El adoptante, a la fecha de la presentación de la petición de adopción, deberá cumplir con los siguientes requisitos:

(1) Haber residido ininterrumpidamente en Puerto Rico por lo menos durante los seis (6) meses anteriores a la fecha de la petición de adopción;
(2) haber alcanzado la mayoría de edad, excepto en el caso en que dos (2) personas unidas en matrimonio adopten conjuntamente, en cuyo caso bastará que uno de ellos sea mayor de edad, pudiendo ser menor de edad el otro adoptante pero nunca menor de dieciocho (18) años;
(3) tener capacidad jurídica para actuar;
(4) tener por lo menos catorce (14) años más que el adoptado menor de edad.

En los casos en que un cónyuge desee adoptar un hijo del otro cónyuge, bastará que a la fecha de la presentación de la petición el adoptante tenga por lo menos dos (2) años de casado con el padre o madre del adoptado o que el cónyuge adoptante tenga por lo menos catorce (14) años más que el adoptado menor de edad.

Por su parte, el Art. 131, 31 L.P.R.A. sec. 532, dispone:

No podrán ser adoptantes las personas declaradas incapaces por decreto judicial mientras dure la incapacidad. En el caso de una persona sentenciada a cumplir pena de reclusión, no podrá ser adoptante mientras dure la misma.

menor, *supra*, pág. 931. Sobre este particular, Diez-Picazo ha señalado que:

> La adopción de un descendiente por el ascendiente fue admitida en el Derecho romano, pero quedó excluida en el Derecho posterior por la exigencia de que el adoptante no tuviera descendencia. La desaparición de este precepto no impide hoy formalmente este tipo de adopción (p. ej., del nieto por el abuelo)…". Diez-Picazo y Gullón, Sistema de Derecho Civil, 3ra ed., Madrid, Ed. Tecnos, 1983, Vol. IV, pág. 382, citado en M.J.C.A., menor v. J.L.E.M., menor, *supra*, pág. 931.

De otra parte, el Art. 3 de la Ley Núm. 9 de 19 de enero de 1995, *supra*, la cual regula el procedimiento de adopción, establece que la petición deberá contener:

> (f) Información sobre custodia legal y de facto del adoptado en caso de que éste sea menor de edad.
>
> Esta incluirá datos referentes a la **relación previa existente** entre el adoptado y el adoptante, la cual luego de corroborada y analizada en sus méritos podrá ser considerada como **elemento fundamental para establecer prioridad** en el proceso de selección de padres adoptivos.
>
> A tales efectos se deberá incluir, pero sin limitarse a, lo siguiente:
>
> (A) Relación por **vínculos de consanguinidad,** afinidad o mediante la custodia provisional autorizada por el Departamento de la Familia o por algún tribunal competente.
> (B) **Período de convivencia** del adoptado con el adoptante, el motivo y la duración del mismo.
> (C) Aportaciones **económicas** y de cualquiera índole que ha hecho el adoptante al mejoramiento físico, emocional e intelectual del adoptado, entre otras. 32 L.P.R.A. sec. 2699b(1)(f) (Énfasis nuestro).

Como puede verse, el legislador autorizó a los tribunales para considerar la "relación previa existente" entre el adoptado y el adoptante como un "elemento fundamental para establecer prioridad" a la hora de seleccionar padres adoptivos. A tales efectos, requirió que la petición estableciera, entre otras cosas, la relación por vínculos de consanguinidad y el período de convivencia del adoptado con el adoptante.

De otra parte, el Art. 2, inciso 10, de la Carta de los Derechos del Niño, Ley. Núm. 338 de 31 de diciembre de 1998, 1 L.P.R.A. sec. 412(10), declara que, excepto cuando sea adoptado por personas ajenas a la familia, todo niño en Puerto Rico tendrá derecho a "continuar relacionándose con aquellos miembros de la familia que tienen significación para él o ella […] siempre que la relación sea en su interés". *Íd*. Si bien esta disposición se refiere a los casos en los que la separación ocurre por muerte de uno de los progenitores o por divorcio, igual espíritu debe reinar en las circunstancias de este caso.

Ahora bien, como regla general, la adopción desarraiga al adoptado de todo vínculo de parentesco y de todo derecho respecto de su familia biológica. M.J.C.A., menor v. J.L.E.M., menor, 124 D.P.R. 910, 933 (1989); Rivera Coll v. Tribunal Superior, 103 D.P.R. 325, 332 (1975). Sin embargo, a esta norma le hemos reconocido una excepción. En Ex parte J.A.A., *supra*, resolvimos que "[n]ada hay en la ley que impida que el adoptado, al adquirir un padre adoptivo siga vinculado en su parentesco natural con su madre biológica,

y viceversa". *Íd.*, pág. 558. Dicho caso trataba de una mujer soltera que solicitó adoptar a la hija de su ex compañero sentimental. El Tribunal de Primera Instancia denegó la petición. Al revocar, recalcamos el hecho de que la niña no había conocido otra madre que no fuera la peticionaria. En consideración de ello, expresamos que la adopción venía a "consagrar ante la ley la situación de hechos que la niña ha conocido dura toda su corta vida". *Íd.*, pág. 560.

De otra parte, en M.J.C.A., menor v. J.L.E.M., menor, *supra*, atendimos una petición de adopción presentada por los abuelos paternos de un menor huérfano. Dicha adopción hubiera desvinculado al menor de su familia biológica por la línea materna. No obstante, sostuvimos que, según lo resuelto en Ex parte J.A.A., *supra*, ello no tenía que ser así necesariamente. M.J.C.A., menor v. J.L.E.M., menor, *supra*, pág. 933. Así, pues, reconocimos "la alternativa de conceder la adopción a los abuelos paternos sin desvincular totalmente al menor de su relación con su parentesco biológico por la línea materna". *Íd.*, pág. 934. Asimismo, expresamos que nada impide que los tribunales consideren otras alternativas, con el fin de identificar la opción más beneficiosa para el menor. *Íd.*

Lo expresado en M.J.C.A., menor v. J.L.E.M., menor, *supra*, sirvió de base para nuestra decisión en Virella v. Proc. Esp. Rel. Fam., *supra*. Dicho caso trataba también sobre la adopción de una nieta por sus abuelos. Distinto al caso anterior, allí la menor no era huérfana. No obstante,

sus abuelos paternos se habían hecho cargo de la niña desde su infancia. Así las cosas, los abuelos presentaron una petición de adopción conjunta. El padre biológico —el hijo de los peticionarios— consintió a la adopción, pero la madre biológica se opuso porque quería retener la patria potestad y custodia legal sobre su hija, y deseaba que esta última conservase su segundo apellido. En vista de ello, se enmendó la petición de adopción para que el abuelo paterno apareciese como adoptante individualmente. El tribunal de instancia autorizó la adopción individual por el abuelo, actuación que fue confirmada por el Tribunal de Apelaciones. No obstante, este Tribunal revocó tras resolver que, conforme al Art. 133 del Código Civil, 31 L.P.R.A. sec. 534, el abuelo no podía adoptar individualmente debido a que estaba casado. Lo que procedía, dijimos, era la adopción conjunta de los abuelos. **Ello, sin perjuicio de que la madre biológica mantuviera ciertas relaciones con su hija.** *Íd.*, pág. 760. En voz del entonces Juez Asociado señor Corrada Del Río, expresamos:

> En [M.J.C.A., menor v. J.L.E.M., menor] indicamos que nada impide que los tribunales, en casos particulares, concedan la adopción y opten por conceder la patria potestad a los abuelos paternos con la custodia compartida entre éstos y la madre biológica del menor. Los tribunales, incluso, pueden considerar "*otro tipo de relaciones con las condiciones que estimen adecuadas y pertinentes*". Lo importante es que las alternativas sean analizadas por el tribunal "a base de los hechos ante sí y del estudio social —mandatorio en estos casos— para optar por la alternativa que beneficie y sea mejor para el menor". En fin, el tribunal deberá siempre determinar dónde residen los mejores intereses del menor y cuál debe ser el remedio más adecuado: la adopción o las alternativas antes

discutidas. *Íd.*, págs. 760-761. (Citas omitidas y énfasis en el original).

En <u>Virella</u>, entendimos que el mejor bienestar del menor estaba con sus abuelos. Por esa razón, estimamos que lo que procedía en ese caso era conceder la adopción a los abuelos, aun cuando la madre biológica del menor deseaba retener la patria potestad y custodia legal de su hijo. Asimismo, favorecimos la adopción del nieto por sus abuelos paternos, aun cuando ambos padres biológicos continuarían relacionándose con el menor.

La jurisprudencia reseñada demuestra nuestra fidelidad al principio de que las normas sobre adopción deben ser interpretadas con el fin de garantizar el mejor bienestar del adoptado. Así, pues, hemos favorecido la flexibilidad y desfavorecido las prohibiciones absolutas. De igual forma, hemos autorizado a los tribunales para considerar otras alternativas que puedan servir los mejores intereses del menor. Puesto que cada familia es un universo y este Tribunal no tiene la capacidad de anticipar todas las situaciones de hechos que pudieran suscitarse, nuestro rol en estos casos debe ser el de establecer guías que ayuden a los tribunales de instancia a llevar a cabo su encomienda de garantizarles un hogar estable a los menores que, por la razón que sea, no lo tienen.

Conforme a lo anterior, reiteramos que, en nuestro ordenamiento, no existe impedimento jurídico a que un ascendiente adopte a un descendiente. De igual forma, reafirmamos que unos abuelos pueden adoptar a su nieto,

incluso cuando el menor mantendría contacto con sus padres biológicos. Cuando el mejor bienestar del menor esté con sus abuelos, y la madre o el padre biológicos deseen tener un rol activo en la crianza de su hijo, los tribunales podrán considerar cualquier otra alternativa que estimen adecuada o pertinente, como, por ejemplo, conceder la patria potestad a los abuelos mediante la adopción, con la custodia compartida entre éstos y cualquiera de los padres biológicos del menor. Lo determinante en este proceso siempre debe ser dónde residen los mejores intereses del menor.

Con estos preceptos en mente, atendamos las particularidades de la presente controversia.

### III.

No existe controversia sobre la capacidad de los peticionarios para garantizar el bienestar de su nieto. El Ministerio Público y la Unidad de Adopciones del Departamento de la Familia coinciden en ello. El Tribunal de Primera Instancia no cuestionó dicha determinación. Así, pues, las objeciones a la presente petición son de carácter estrictamente jurídico. Por un lado, el tribunal de instancia denegó la adopción por entender que el propósito de la adopción es salvaguardar el bienestar de los menores maltratados, desamparados, abandonados y sin hogar alguno, consideraciones, que según el foro primario, no están presentes en este caso. Por el otro, el Tribunal de Apelaciones confirmó tal dictamen bajo el fundamento principal de que la adopción no desvincularía al menor de

su madre biológica, lo cual, según ese foro, es contrario a la normativa vigente.

En los casos de adopción, nuestro norte siempre debe ser el bienestar del menor. Así como nuestra interpretación de la ley de adopción no debe ser tan liberal que violente la intención legislativa, tampoco puede ser tan estrecha que frustre su noble propósito de garantizarles un hogar estable a los menores que no lo tienen. Si bien nuestra normativa sobre adopción va dirigida a prestar **particular** atención a los menores maltratados, abandonados y desamparados, de manera que éstos tengan la oportunidad de criarse en un hogar donde puedan recibir la atención que se merecen, no sería justo entender que dicha normativa **únicamente** atiende tales casos. Tal interpretación iría en detrimento del bienestar de muchos menores que, en el sentido más estricto, no son huérfanos ni han sido víctimas de maltrato o abandono. Conforme a lo anterior, la adopción debe también servir para atender la necesidad de ofrecer hogares estables a menores cuyos progenitores no están en condiciones de asumir la responsabilidad que supone ser padre o madre.

Por otro lado, si bien la norma general es que la adopción desvincule al adoptado de todo vínculo de parentesco, hemos reconocido, a modo de excepción, la posibilidad de que un tribunal conceda la adopción de un menor a sus abuelos sin desvincular totalmente al menor de su parentela biológica. Virella v. Proc. Esp. Rel. Fam., *supra*; M.J.C.A., menor v. J.L.E.M., menor, *supra*. En todo

momento, nos referimos al vínculo jurídico que une al menor con su familia biológica, no al vínculo natural. **Así, no podemos suscribir una interpretación de la ley cuyo efecto práctico es el de supeditar la adopción de un nieto por sus abuelos al requisito de que la madre biológica del menor renuncie a la posibilidad de relacionarse con su hijo. No vemos cómo una interpretación tan estricta propende al bienestar del menor. Tampoco vemos cómo abona a la política pública de que, en casos de adopción entre parientes, los menores continúen relacionándose con aquellos miembros de la familia que son importantes para ellos.** Art. 2, inciso 10, de la Carta de los Derechos del Niño, *supra*.

Como argumento adicional en contra de la presente petición, el Tribunal de Apelaciones señaló que permitir la adopción podría crear confusión en la psiquis del niño, elemento que, según dicho foro, la trabajadora social no consideró en su estudio social. No estamos en posición de determinar si este elemento fue considerado o no por la trabajadora social. Sin embargo, se nos hace difícil pensar que dicha profesional no haya considerado un aspecto tan evidente. Asimismo, no vemos cómo una adopción que vendría a formalizar la relación doméstica ya existente entre los peticionarios y su nieto podría confundir a este último.

La teoría de que la presente adopción crearía una confusión en la psiquis del menor es, a lo sumo, una hipótesis. La realidad es que no estamos en posición de hacer tal determinación. Para ello, la ley ordena que, en casos como éste, se haga un estudio social que los

tribunales luego debemos considerar para determinar si la adopción sirve los mejores intereses del menor.

No obstante lo anterior, entendemos que, llevado hasta sus últimas consecuencias, el razonamiento empleado por el Tribunal de Apelaciones nos requeriría intervenir con toda una serie de prácticas familiares. Bajo el pretexto de no confundir a los menores, no podríamos, por ejemplo, permitir que una madre con custodia de su hijo menor se case con un hombre distinto al padre de su hijo. ¿O es que ello no crea una confusión en la psiquis del menor?

**En suma, no tenemos los elementos de juicio ni la pericia para evaluar el efecto que la adopción solicitada tendría sobre la psiquis del menor concernido. Así, pues, cómo mejor garantizamos el bienestar del menor es dejando dicha determinación a los especialistas en conducta humana.**

De otra parte, el foro apelativo intermedio concluyó que el consentimiento de la madre biológica estuvo viciado toda vez que ésta no quería o comprendía las consecuencias de la adopción, según se deduce de su alegada pretensión de continuar relacionándose con el menor. De la referida declaración, surge que la madre biológica autorizó que su hijo fuera adoptado por sus abuelos "para todos los efectos legales". Dicha declaración no fue cuestionada. Además, de los hechos del casos se deduce que la madre biológica optó por desentenderse de su responsabilidad como madre. Como mínimo, esto ocurrió cuando, teniendo cinco años el menor, ella se fue del hogar de sus padres y dejó a su hijo viviendo con sus abuelos. Más aún, es posible que la madre

biológica, quien tenía apenas 14 años cuando su hijo nació, nunca asumiera tal responsabilidad. A esto se le suma el hecho de que, posteriormente, la madre biológica tuvo más hijos de otro padre, y en ningún momento ha procurado que el menor S.A.C. vaya a vivir con ellos. De lo anterior surge que la madre biológica consintió a que sus padres —los abuelos de S.A.C.— fueran quienes criaran a su hijo. **Estamos, pues, ante una adopción que viene a convertir en realidad jurídica lo que hace años es una realidad *de facto*. Es decir, la adopción no trastoca la realidad doméstica de la familia; por el contrario, la formaliza.** En ese contexto, la madre biológica no debió haber tenido dificultad en entender las consecuencias de la adopción.

Igualmente, ambos foros inferiores cuestionaron los motivos de los peticionarios para querer adoptar a su nieto. Indicaron que el único fundamento para la presente adopción es el beneficio económico por incapacidad que el peticionario y abuelo del menor, el Sr. Carrillo Vázquez, recibe de la Administración de Veteranos. Dicho beneficio, sostuvieron, no puede ser el fundamento para conceder una adopción. Entendemos que la posibilidad de que dicho beneficio económico sea de provecho para el menor no es, de por sí, un fundamento para conceder o denegar la petición de adopción. Ahora bien, no cabe duda de que este elemento puede ser considerado al analizar si la adopción solicitada contribuye al bienestar del menor. Así lo reconoció el legislador en la Ley Núm. 9 de 1995, *supra*, cuando indicó que mediante la agilización del proceso de adopción se

perseguía "el fin de que al adoptado se le provea, con carácter permanente, un hogar donde se le brinde cariño, cuidado, protección, **seguridad económica**, social y emocional". Exposición de Motivos, Ley Núm. 9 de 19 de enero de 1995, 1995 Leyes de Puerto Rico, pág. 61 (Énfasis nuestro). No debe perderse de vista que, de ordinario, el factor económico incide en el acceso a servicios dirigidos a alcanzar el desarrollo óptimo del menor, tales como la educación y la salud.

Por último, debemos atender el planteamiento de los tribunales inferiores en el sentido de que lo que procedía en este caso era que los abuelos solicitaran la custodia de su nieto. Es correcto que los peticionarios tenían esa alternativa, mas no era la única que tenían. Como hemos visto, en nuestro ordenamiento no existe impedimento a que unos abuelos adopten a su nieto, incluso cuando, como en este caso, la madre biológica continuaría relacionándose con el menor. Así, pues, recae sobre las partes concernidas la determinación inicial de qué arreglo jurídico-familiar es el más apropiado para garantizar los mejores intereses del menor. Dicha determinación inicial luego deberá ser avalada por un tribunal, el cual verificará que la adopción solicitada cumpla con los requisitos de ley y evaluará la petición a la luz criterios establecidos para ello.

La custodia no tiene los mismos efectos jurídicos que la patria potestad adquirida por la adopción. Con sólo la custodia, los abuelos no podrían, por ejemplo, suplir la capacidad de su nieto menor. Para ello, tendrían que

obtener la tutela. Tal trámite sería una carga adicional a los abuelos toda vez que, como tutores, tendrían que cumplir con toda una serie de requerimientos que nuestra normativa sobre la tutela impone. Por otro lado, mediante la adopción, los abuelos obtendrían la custodia **permanente** del menor. Diferente sería el caso si tuvieran sólo la custodia. En tales circunstancias, los abuelos quedarían a la merced de que, en un futuro incierto, la madre o el padre biológicos soliciten la custodia del menor. Resulta evidente que, en el presente caso, tal eventualidad daría al traste con la estabilidad y seguridad de las que el menor S.A.C. goza actualmente junto a sus figuras paternas *de facto*, sus abuelos. Sólo la adopción garantizaría el disfrute ininterrumpido de dichas condiciones, amén de que formalizaría la responsabilidad parental que los abuelos han asumido respecto a su nieto.

En suma, coincidimos con la apreciación de que quienes mejor pueden garantizar el bienestar del menor S.A.C. son los peticionarios. Asimismo, estimamos que, en las circunstancias específicas de este caso, la adopción es el mecanismo jurídico que mayor protección ofrece los mejores intereses del menor. Por estas razones, y convencidos de que no existe ningún impedimento jurídico a la adopción solicitada, hubiéramos revocado la sentencia del Tribunal de Apelaciones.


                                        Federico Hernández Denton
                                             Juez Presidente